FILED
**United States Court of Appeals**
**Tenth Circuit**

**March 29, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DUNCAN FRANK, on behalf of himself
and all others similarly situated,

    Plaintiff - Appellant,

v.

CRAWLEY PETROLEUM CORP.,

    Defendant - Appellee.

No. 20-6018

_____

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:14-CV-01193-PRW)**
_____

Rex A. Sharp (Barbara C. Frankland and Ryan C. Hudson, with him on the briefs) Sharp
Law, LLP, Prairie Village, Kansas, for Plaintiff-Appellant.

Patrick L. Stein (Robert W. Dace and Cole McLanahan, with him on the brief), McAfee
& Taft, P.C., Oklahoma City, Oklahoma, for the Defendant-Appellee.
_____

Before **HARTZ**, **EBEL**, and **McHUGH**, Circuit Judges.
_____

**HARTZ**, Circuit Judge.
_____

Rex Sharp, the attorney for Plaintiff Duncan Frank in a putative class-action

against Crawley Petroleum Corporation, appeals a district-court order granting Plaintiff's

motion for voluntary dismissal of his claim with prejudice but placing three restrictions

on Mr. Sharp's bringing similar putative class-action claims against Crawley on behalf of other plaintiffs. Mr. Sharp asserts that two of the three conditions were improperly imposed because the dismissal caused no legal prejudice to Crawley.

Crawley has moved to dismiss the appeal for lack of jurisdiction. We deny the motion to dismiss because Mr. Sharp is expressly referenced in the order and is directly bound by it. Although a nonparty, he is a proper appellant, he has standing to appeal, and the order was a final, appealable order.

We also agree with Mr. Sharp on the merits of his appeal. Conditions may be imposed on a requested dismissal of a complaint if the dismissal could create legal prejudice to the defendant. But Crawley has not identified any legal prejudice that it would suffer from the dismissal with prejudice of Plaintiff's complaint. To be sure, if the litigation had been permitted to proceed, Crawley may have obtained a favorable ruling on class certification. But that ruling would not bind any other plaintiff who brings a similar or even identical putative class-action against Crawley. Therefore, Crawley would not be better off in regard to class certification than it is with the dismissal with prejudice of Plaintiff's complaint. We remand to the district court with instructions to grant Plaintiff's requested dismissal without the challenged conditions.

## I.    BACKGROUND

Plaintiff owns a royalty interest in an oil and gas well operated by Crawley in Oklahoma. In 2014 Plaintiff filed a putative class action against Crawley in Oklahoma state court on behalf of himself and other royalty owners of Crawley-operated gas-

producing wells. He alleged that Crawley has been underpaying the royalties owed on natural-gas production.

Crawley removed the case to the United States District Court for the Western District of Oklahoma, predicating diversity jurisdiction on 28 U.S.C. § 1332(d)(2) of the Class Action Fairness Act. The parties proceeded with discovery limited to class-certification issues (much of that concerning the suitability of Plaintiff as class representative) and the propriety of the removal to federal court. They completed briefing in April 2017 on Plaintiff's motion for class certification. The district court then stayed the action for over a year pending a decision by the Oklahoma Court of Appeals in an unrelated case that presented state-law issues relevant to Plaintiff's claims.

In April 2019, after the stay was lifted and a briefing schedule had been set on pending motions relating to class certification, the case was reassigned to District Judge Patrick R. Wyrick. Two months later Plaintiff moved to voluntarily dismiss his case with prejudice under Fed. R. Civ. P. 41(a)(2), stating that he "d[id] not wish to proceed with this litigation." Aplt. App. at 21.

Crawley opposed the motion. It alleged that it had already spent about $1 million defending the suit and "[m]uch of that will be wasted, even if another putative class representative sues Crawley for the same claims." *Id.* at 23; *see id.* at 33–34 (asserting that much of the discovery—which was limited to the propriety of class certification—focused on Plaintiff himself and much of it "will have to be redone for whoever the next proposed class representative is"). It said that "[t]he Court should not allow Plaintiff to force Crawley to incur such enormous expense and then walk away, leaving Crawley

3

with neither legal vindication nor recourse." *Id.* at 24. It argued that "[r]ather than let Plaintiff walk away, the Court should rule on the presently pending class certification motions. As such, Plaintiff's motion should be denied . . . ." *Id.* Alternatively, "at the minimum, the Court should condition dismissal on an award of attorney's fees against Plaintiff for the fees Crawley has now wasted on the class certification fight and will have to re-incur if and when Plaintiff's counsel files the next putative class action lawsuit against Crawley." *Id.*

The district court elected the second alternative. It granted Plaintiff's motion to dismiss, but subject to certain conditions. It concluded that Crawley had "demonstrated some level of legal prejudice [stemming from the dismissal], but . . . not enough to avoid dismissal with prejudice—particularly after the imposition of terms that the [c]ourt consider[ed] proper." *Id.* at 55. Those terms were:

> (1) In the event counsel for Plaintiff . . . file[s] any suit seeking to certify substantially the same class against Crawley Petroleum Corp., such suit shall be filed in the U.S. District Court for the Western District of Oklahoma and assigned to the Honorable Patrick R. Wyrick.
>
> (2) In the event such suit is filed, all discovery accomplished in this case shall carry over to the new case.
>
> (3) In the event such suit is filed, Defendant will be permitted to file an application for costs and attorney fees pursuant to Rule 41(d) of the Federal Rules of Civil Procedure.

*Id.* at 59. The court indicated that the conditions were not a punishment for any improper behavior by counsel. It said that "Plaintiff's counsel hasn't engaged in vexatious behavior against" Crawley. *Id.* at 58. And although it stated that "Plaintiff's counsel's

4

actions in other similar class actions . . . raise[] the specter of bad faith dismissal so that a more favorable forum can be sought," it declined Plaintiff's offer to provide in camera a more detailed explanation of the reasons for seeking dismissal. *Id*. at 56.

Because the court had crafted the conditions sua sponte without prior notice to the parties, it gave Plaintiff four days in which to either accept the conditions or withdraw the motion for voluntary dismissal. Plaintiff instead filed a motion for reconsideration. The court responded that the proposed order would be entered unless Plaintiff withdrew the voluntary-dismissal motion within four days. Plaintiff declined to withdraw the motion and filed a "Non-Consent of Plaintiff's Counsel to Conditions" 1 and 3. *Id.* at 121. The district court granted the motion for voluntary dismissal and imposed all three conditions.

Mr. Sharp filed a notice of appeal in Plaintiff's name. In response, Crawley filed a motion to dismiss the appeal for lack of appellate jurisdiction. We first address appellate jurisdiction and then turn to the validity of the conditions imposed on the dismissal.

II.    DISCUSSION

A.    Appellate Jurisdiction

This appeal raises a number of issues regarding the propriety of our considering the matter, particularly at this time. We have a duty to resolve those issues before addressing the merits regardless of whether they are raised by the parties, *see Butler v. Biocore Med. Techs., Inc.*, 348 F.3d 1163, 1166 (10th Cir. 2003), although Crawley has raised most of them. We first determine that Mr. Sharp is properly considered the appellant and decide that he is a proper appellant even though he was not a party in the district court. We then determine that he has standing to bring the appeal. Finally, we

5

hold that the order imposing conditions is a final order that can be appealed at this time. We distinguish a precedent of this court relied on by Crawley, *Coffey v. Whirlpool Corp.*, 591 F.2d 618 (1979).

Crawley's motion to dismiss contends that Plaintiff cannot appeal the district court's order of dismissal because he was not aggrieved by the order (after all, he had moved to dismiss the case with prejudice) and has no stake in the outcome of the appeal (which concerns only limitations on Mr. Sharp, Plaintiff's attorney). There is considerable merit to those arguments so long as Plaintiff is considered to be the appellant. In our view, however, it was clear from the outset that the appeal was being taken on behalf of his attorney, Mr. Sharp. Under Fed. R. App. P. 3(c)(4), "[a]n appeal must not be dismissed . . . for failure to name a party whose intent to appeal is otherwise clear from the notice." Complying with that rule, we held in *Laurino v. Tate*, 220 F.3d 1213 (10th Cir. 2000), that we had jurisdiction over the portion of an appeal that challenged Rule 11 sanctions against attorney Thomas McDowell, even though "[t]he notice of appeal nowhere mentions Mr. McDowell, except for being signed by him as attorney for appellant." *Id.* at 1218. We said that designation of the sanctions order as an object of the appeal "provides sufficient evidence, by implication, of Mr. McDowell's intention to take an appeal from the order of sanctions." *Id.* By the same token, we have jurisdiction despite the failure of the notice of appeal to designate Mr. Sharp as the appellant.

Mr. Sharp, however, was not a party in the district-court litigation. "The rule that only parties to a lawsuit, or those that properly become parties, may appeal an adverse

6

judgment, is well settled." *Marino v. Ortiz*, 484 U.S. 301, 304 (1988). But this general rule has exceptions, as when a "non-party possesses a 'unique interest' in the outcome of the case and actively participates in the proceedings relating to that interest." *Abeyta v. City of Albuquerque*, 664 F.3d 792, 795 (10th Cir. 2011). Mr. Sharp undoubtedly has such an interest. We have entertained appeals from nonparty attorneys when the attorney is a specific object of the challenged order. *See Butler*, 348 F.3d at 1166–69 (order found that attorney had committed ethical violations); *Weeks v. Indep. Sch. Dist. No. I-89*, 230 F.3d 1201, 1207–08 (10th Cir. 2000) (order disqualifying attorney); 15A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3902.1 at 122 (2d ed. 1992) ("The easiest cases for permitting nonparty appeal are those in which a court order directly binds the nonparty by name."); *cf. Devlin v. Scardelletti*, 536 U.S. 1, 8 (2002) (nonnamed class members, who had not intervened in district court, could appeal approval of class settlement because "they were bound by the order from which they were seeking to appeal").

Crawley argues, however, that Mr. Sharp nevertheless lacks *standing* to pursue the appeal. "The standing Article III [of the United States Constitution] requires must be met by persons seeking appellate review, just as it must be met by persons appearing in courts of first instance." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997). Constitutional standing has three elements: "injury, causation, and redressability." *Devlin*, 536 U.S. at 7. We commonly describe the injury element by saying that the appellant "must be aggrieved by the order from which appeal is taken." *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 854 (10th Cir. 1993). The injury

7

must be "an invasion of a legally protected interest that is concrete and particularized and actual or imminent." *Arizonans*, 520 U.S. at 64 (internal quotation marks omitted).

Crawley argues that Mr. Sharp has not satisfied the injury element because the dismissal conditions are not sanctions against him:  he is not required to make a monetary payment, he is not reprimanded, nor is he subject to any disciplinary action.  But Crawley does not explain, nor do we perceive, why appellate jurisdiction should be limited to such circumstances.  Mr. Sharp has a legally protected interest in practicing his profession. *See Weeks*, 230 F.3d at 1208 (attorney had "standing to appeal the disqualification order" issued against her).  He is aggrieved by any order limiting that interest, and the order's restrictions affect his ability to obtain clients and the venues in which he can bring litigation.  *See Butler*, 348 F.3d at 1167, 1169 (order damaging an attorney's reputation "impose[d] a legally sufficient injury to support appellate jurisdiction" in part because it could, "in the long run[,] . . . strike the lawyer's bank account").

Is this injury "actual or imminent," *Arizonans*, 520 U.S. at 64, under standing doctrine?  Crawley suggests that Mr. Sharp has "not suffered any present injury from the district court's judgment."  Aplee. Br. at 15.  It asserts that the conditions "are not triggered unless and until [Mr. Sharp] files a [new] putative class action" against Crawley and that they "do not foreclose any future party's claims, nor are they akin to pre-suit authorization requirements such that they actually impair anyone's ability to file a lawsuit in the future."  *Id.*

We are not persuaded.  The injury is present now because Mr. Sharp must refrain from taking certain actions.  True, the imposition of any sanction against him is

8

dependent on his violating the order. But that "conditional" aspect of the order does not prevent standing. If it did, no one could successfully challenge offensive legislation or even an injunction without first violating it, since no sanction could befall challengers until they did so. The Supreme Court has "permitted pre-enforcement review [of a law that allegedly deters the exercise of constitutional rights] under circumstances that render the threatened enforcement sufficiently imminent." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014). And sufficient imminence is established when the challenger "alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Id.* (internal quotation marks omitted). That standard of imminence is clearly satisfied when the challenge is to an order prohibiting conduct by the challenger. *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149–53 (2010) (challenge to district-court injunction prohibiting future planting of genetically engineered crop satisfied standing criteria, including that of imminent injury). After all, the order is entered only because the issuing court is persuaded that otherwise the challenger would likely engage in the prohibited activity. In this case the district court was concerned that Mr. Sharp would bring similar class actions against Crawley in other venues representing other putative class members. We see no need in this circumstance for Mr. Sharp to allege that the court's concerns were well-founded. His appeal is in itself proof enough. *See United States v. Sweeney*, 914 F.2d 1260, 1263 (9th Cir. 1990) ("The U.S. Attorney's Office has standing to object to orders specifically directing it to

9

take or refrain from taking action," and argument that it lacked standing was "frivolous.").

The other elements of standing—causation and redressability—are obviously satisfied. The limitations on Mr. Sharp's legally protected interests are directly caused by the order, and overturning the order would remedy the problem. He therefore has standing to appeal the order. This is hardly a remarkable result. *See Raley v. Hyundai Motor Co.*, 642 F.3d 1271, 1275 (10th Cir. 2011) (Gorsuch, J.) (nonnamed parties, such as sanctioned attorneys, have Article III standing when "they have been injured by a district court ruling and a favorable decision on appeal would ameliorate that injury"); *Weeks*, 230 F.3d at 1208 (attorney had "standing to appeal the disqualification order" issued against her); *cf.* 15A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3902 at 98 (2d ed. 1992) ("If the court affixes conditions opposed by the party requesting judgment, . . . that party should have standing to appeal the conditions."). Thus, we are doing nothing more than confirming our well-established rule that "[c]ounsel have standing to appeal from orders issued directly against them." *Uselton*, 9 F.3d at 854.

We next consider the issue of the finality of the judgment being appealed. Ordinarily, an order is not appealable unless it is a "final decision[]." 28 U.S.C. § 1291. Our general rule is that a district-court decision is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment" or complete a "ministerial task." *Estate of Cummings v. Cmty. Health Sys., Inc.*, 881 F.3d 793, 805 (10th Cir. 2018). The final-decision requirement precludes piecemeal appeals that delay

10

and complicate litigation. As the Supreme Court has explained, the requirement "preserves the proper balance between trial and appellate courts, minimizes the harassment and delay that would result from repeated interlocutory appeals, and promotes the efficient administration of justice." *Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1712 (2017).

The district-court order granting Plaintiff's motion to dismiss with prejudice and imposing conditions on Mr. Sharp is certainly a final decision. There was nothing pending before the district court after it issued that order. Permitting an appeal of the conditions imposed by that order does not lead to piecemeal appeals since there is nothing else that could be appealed. No litigation is interrupted and delayed by permitting the appeal. This is not an order entered in the midst of litigation, such as an order to comply with discovery, where an appeal would pose the problems identified in *Microsoft*. *See, e.g.*, *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 112–13 (2009) (disclosure order adverse to claim of attorney-client privilege is not appealable final decision).

Moreover, delaying Mr. Sharp's right to appeal has consequences that may be irreparable. So long as the order is in effect, Mr. Sharp may have difficulty retaining clients to pursue a class action against Crawley; and even if he is ultimately successful in obtaining clients, a delay could have severe statute-of-limitations implications. Similar restrictions on a party have been held to be appealable by other circuit courts even when the dismissal of the complaint was *without* prejudice. *See LeCompte v. Mr. Chip, Inc.*, 528 F.2d 601, 603–04 (5th Cir. 1976) (dismissal order requiring, among other things, that

11

any refiling be in the same court would "severely circumscribe[] [the plaintiff's] freedom to bring a later suit," so the order was "a final appealable order"); *Bechuck v. Home Depot U.S.A., Inc.*, 814 F.3d 287, 295–97 (5th Cir. 2016) (similar).

Another reason for permitting this appeal is sound judicial administration. What possible advantage is gained by delaying an appeal until Mr. Sharp violates a condition of the order by, say, filing a putative class action against Crawley in state court on behalf of another plaintiff? When a permanent injunction is entered—akin to Mr. Sharp's Condition 1 in that it compels or restricts certain behavior—we do not require the person enjoined to violate the injunction before being permitted to challenge it on appeal. On the contrary, the merits or validity of the injunction generally cannot be challenged after a violation if no appeal was taken when the injunction was entered. As stated by the First Circuit, "Ordinarily the validity and terms of an injunction are not reviewable in contempt proceedings. They may be challenged only on appeal in the original proceeding and not by collateral attack." *G. & C. Merriam Co. v. Webster Dictionary Co., Inc.*, 639 F.2d 29, 34 (1st Cir. 1980); *see John Zink Co. v. Zink*, 241 F.3d 1256, 1260 (10th Cir. 2001) (citing with approval the prior quotation and stating that challenge to injunction "should have been raised in an appeal from the [original] proceeding").

This is not to say that all final orders can be appealed. For example, if a party moves for a judgment against it on all claims, it cannot appeal the judgment entered. But that is not because the judgment is not final. It is because the motion waived the party's right to appeal, *see United States v. Babbitt*, 104 U.S. 767, 768 (1882); *Bryan v. Office of Pers. Mgmt.*, 165 F.3d 1315, 1321 (10th Cir. 1999), or because there is no longer a case

12

or controversy, *see Microsoft*, 137 S. Ct. at 1716–17 (Thomas, J., concurring).[1]  Neither proposition applies here, since Mr. Sharp has waived nothing, and we have already determined (in the discussion of standing) that we are presented with an Article III case or controversy.

In addition, the Supreme Court, adhering to the proposition that "finality is to be given a practical rather than a technical construction," *Microsoft*, 137 S. Ct. at 1712 (internal quotation marks omitted), has refused to treat as final a dismissal with prejudice that amounted to a tactical end run around the Federal Rules of Civil Procedure and the procedures established by statute for interlocutory challenges to class-certification rulings, *id.* at 1713–15.  Mr. Sharp, however, has engaged in no such tactics.

In short, we discern no reason to treat the order of dismissal (including the conditions imposed on Mr. Sharp) as anything other than a final, appealable order.  The Eleventh Circuit reached this same conclusion in *Woodard v. STP Corp.*, 170 F.3d 1043 (11th Cir. 1999), where it exercised appellate jurisdiction to consider a challenge to a filing restriction (authorizing attorney-fee sanction if any attorney for the putative class sued the defendants in any forum) after voluntary dismissal with prejudice of a putative

---

[1]  Appellate courts have recognized some exceptions to this prohibition, as when the district court goes beyond simply granting the motion to dismiss and imposes conditions on the dismissal that the movant seeks to challenge on appeal, *see Bryan*, 165 F.3d at 1321 n.7, or when the motion to dismiss comes after the district court has ruled against the movant on some claims and the movant is willing to sacrifice the remaining claims in exchange for a prompt appeal of the adverse decisions, *see id.*; *Niemi v. Lasshofer*, 770 F.3d 1331, 1342 (10th Cir. 2014) ("A dismissal of all claims with prejudice, even if voluntarily sought by the party who initiated the suit, is final for purposes of appellate jurisdiction.").

class action, *see id.* at 1044–45; *LeCompte*, 528 F.2d at 603 (dismissal requiring that any refiling be in the same court was "a final appealable order"); *Bechuck*, 814 F.3d at 295–97 (similar). Our view that Mr. Sharp is challenging a final, appealable decision is compelled by general principles and, as far as we can tell, is consistent with all relevant authority.

In particular, our conclusion is not contradicted by this court's short per curiam opinion in *Coffey*, cited by Crawley as support for its contention that the dismissal order is not appealable. In *Coffey* the plaintiffs, who sought damages from a house fire caused by an allegedly defective cooktop manufactured by Whirlpool, apparently had not been pursuing the case diligently. *See* 591 F.2d at 618–19. When Whirlpool moved for dismissal with prejudice for failure to prosecute, the plaintiffs themselves moved to dismiss without prejudice. *See id.* at 619. The district court granted the plaintiffs' motion but on condition that Whirlpool be paid $1400 in attorney fees if either the plaintiffs or their insurer, Hanover Insurance Company (which wanted to be substituted as the real party in interest to pursue its rights as subrogee of the plaintiffs' claim), refiled the claim. *See id.* The plaintiffs then moved to vacate the dismissal, stating that Hanover, which had not been made a party, wished to be substituted for the plaintiffs as the real party in interest, presumably without offering to pay the $1400. *See id.* The district court rejected the motion, and Hanover filed a notice of appeal of the dismissal order with its conditions. *See id.* We dismissed the appeal. *See id.* at 620. First, we said that nonparties do not have standing to appeal absent "extraordinary circumstances," which were not present here. *Id.* at 619. We noted that no requirement was imposed on

14

Hanover unless it became a party, and if it did become a party and was required to make a payment under the order, it could appeal the requirement after a final judgment was entered. *See id.* Second, we said that even if Hanover were treated as the real party in interest, the dismissal without prejudice was not a final appealable order. *See id.* at 620. We noted that "[a] case dismissed without prejudice may or may not be a final appealable order, depending upon the circumstances." *Id.* Because this was not a case where the dismissal was "intended to dispose of the cause of action," we concluded that the dismissal should not be treated as a final order; the payment requirement could "be reviewed upon appeal from a final order in a refiled action brought in compliance with the order of the court." *Id.* "Until that refiling," we said, "Hanover has incurred no liability and there is nothing for us to consider." *Id.*

Crawley reads *Coffey* as rejecting appellate jurisdiction on the ground that the dismissal conditions were merely "contingent," being triggered only if the insurer refiled the claim, just as the dismissal conditions here would affect Mr. Sharp only if he filed a new class action on behalf of a different plaintiff. Aplee. Br. at 15. But this reading ignores the procedural posture of *Coffey* and the rationale of the court's decision. The problem was not the "contingency" of the sanction; the problem was that the underlying litigation was continuing. What we decided, in essence, was that the appeal was a premature interlocutory appeal. Rather than interrupt the litigation for an appeal, we said that Hanover should pay Whirlpool the $1400 and proceed with the litigation; then, after final judgment it could appeal the required payment and, if it prevailed on that issue, could presumably get back the $1400 plus interest. The only burden on Hanover from

15

the delay in the appeal would be that it would temporarily be out of pocket a relatively small sum that could be fully compensated later. Perhaps the analysis would have been somewhat different if Hanover had indicated that it wished to pursue the litigation in a different venue, such as a state court. But that possibility was apparently not in anyone's contemplation.

The situation in the case before us is quite different. To begin with, the dismissal in this case was with prejudice. It "dispose[d] of the cause of action," *Coffey*, 591 F.2d at 620, by ending the litigation. Plaintiff Frank had no intent or interest in continuing the litigation he began; nor does Mr. Sharp. We cannot say, as the court did of the insurer in *Coffey*, that Mr. Sharp should be patient and await the termination of the Frank litigation before appealing. That moment has already arrived. The case has been terminated. Further, as previously noted, delay has consequences to Mr. Sharp's representation of other plaintiffs that may be irreparable. Our decision in *Coffey* in no way undermines our decision on this appeal.

We conclude that we have appellate jurisdiction.

### B.  Merits

Rule 41(a)(2) "permits a district court to dismiss an action . . . upon such terms and conditions as the court deems proper." *Am. Nat. Bank & Tr. Co. of Sapulpa v. Bic Corp.*, 931 F.2d 1411, 1412 (10th Cir. 1991) (internal quotation marks omitted). "The rule is designed primarily to prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions." *Brown v. Baeke*, 413 F.3d 1121, 1123 (10th Cir. 2005) (internal quotation marks omitted). "Conditions are

16

designed to alleviate any prejudice a defendant might otherwise suffer upon refiling of an action." *Am. Nat. Bank*, 931 F.2d at 1412. "[P]rejudice is a function of . . . practical factors including: the opposing party's effort and expense in preparing for trial; excessive delay and lack of diligence on the part of the movant; insufficient explanation of the need for a dismissal; and the present stage of litigation." *Brown*, 413 F.3d at 1124 (internal quotation marks omitted). "These factors are neither exhaustive nor conclusive; the court should be sensitive to other considerations unique to the circumstances of each case." *Id.* "[I]n reaching its conclusion, the district court should endeavor to insure substantial justice is accorded to both parties, and therefore the court must consider the equities not only facing the defendant, but also those facing the plaintiff." *Id.* "The district court, however, should impose only those conditions which actually will alleviate harm to the defendant." *Am. Nat. Bank*, 931 F.2d at 1412.

These rules apply to dismissals with prejudice as well as dismissals without. *See Cty. of Santa Fe v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1049 (10th Cir. 2002) (the "normal" legal-prejudice analysis that governs dismissals without prejudice also governs dismissals with prejudice, although the presence of prejudice will be "rare"); *AeroTech, Inc. v. Estes*, 110 F.3d 1523, 1528 (10th Cir. 1997) (in "exceptional circumstances," attorney fees can be awarded to a defendant even when the plaintiff voluntarily dismisses with prejudice). We review for abuse of discretion a dismissal under Rule 41(a)(2) and the imposition of any accompanying conditions. *See Am. Nat. Bank*, 931 F.2d at 1412.

Mr. Sharp argues that the district court's imposition of Conditions 1 (requiring that any substantially similar putative class action against Crawley filed by Mr. Sharp on

17

behalf of another plaintiff be filed in the same federal district and assigned to the same judge) and 3 (permitting Crawley to seek costs and attorney fees under Rule 41(d) if such a suit is filed) was an abuse of discretion.[2]  His principal contention is that the conditions were improper because neither the district court nor Crawley has identified any legal prejudice to Crawley created by the dismissal.  We agree.  The legal prejudice they have identified would have been equally present if the district court had proceeded to resolve the class-certification motion (as initially requested by Crawley in response to Plaintiff's motion to dismiss with prejudice).  We first address the district court's findings with respect to prejudice and then turn to Crawley's additional arguments on the matter.

The district court concluded (1) that Crawley's "effort and expense associated with defending Plaintiff's class certification motion demonstrate legal prejudice" because Crawley "has expended a substantial amount of money defending this class action, and not all of the work performed can be recycled in the event another putative class action is filed against" it, and (2) that Plaintiff's "insufficient explanation for the need for a dismissal" coupled with "Plaintiff's counsel's actions in other similar class actions . . . raise[] the specter of bad faith dismissal so that a more favorable forum can be sought." Aplt. App. at 55–56.  The court imposed the conditions to cure this purported legal prejudice arising from the dismissal.  The problem with the court's reasoning, as we

---

[2]  Because Mr. Sharp did not challenge Condition 2 (requiring discovery in this case to be carried over to any new similar class action against Crawley filed by Mr. Sharp on behalf of another plaintiff) in his opening brief (or even in his reply brief or at oral argument), he has waived any challenge to it. *See Sawyers v. Norton*, 962 F.3d 1270, 1286 (10th Cir. 2020) ("Issues not raised in the opening brief are deemed abandoned or waived." (internal quotation marks omitted)).

proceed to explain, is that Crawley was subject to these risks regardless of whether the court granted the motion for voluntary dismissal, and the dismissal therefore cannot be the source of the "prejudice" the district court identified.

Our conclusion follows from *Smith v. Bayer Corp.*, 564 U.S. 299 (2011). In that opinion the Supreme Court addressed whether the denial of class certification in an earlier case could preclude a request for class certification in a new putative class action brought by a different plaintiff against the same defendant. *See id.* at 302. The Court answered no: "A court's judgment [generally] binds only the parties to a suit," *id.* at 312, and unnamed putative class members are certainly not parties before the class is certified, *see id.* at 313. The Court recognized the class-action exception to the general rule against nonparty preclusion, which "allows unnamed members of a class action to be bound, even though they are not parties to the suit." *Id.* at 314. But certification of the class is a precondition to such preclusion: "Neither a proposed class action nor a rejected class action may bind nonparties." *Id.* at 315; *see* Tobias Barrington Wolff, *Multiple Attempts at Class Certification*, 99 Iowa L. Rev. Bull. 137, 139 (2014) ("Because no properly conducted class action ever existed in the *Bayer* action, no non-party preclusion was possible." (internal quotation marks omitted)).

The district court's reasoning did not take *Bayer* into account. It thought that by derailing the present case and preventing the district court from ruling against class certification, Plaintiff (through his attorney, Mr. Sharp) would prejudice Crawley by wasting the time it had already spent on the certification issue in the pursuit of matters (such as the suitability of Plaintiff as a class representative) that would be irrelevant to

19

certification of the class in a later suit. But the dismissal would not have *caused* that prejudice because the same result would have obtained if Plaintiff, rather than dismissing his claim, had pursued class certification and lost. Under *Bayer* there would be no constraint on Mr. Sharp's representing a different named plaintiff in pursuit of an identical putative class action.[3] The district court did not explain how Crawley was prejudiced by Plaintiff's voluntary dismissal. On the contrary, the dismissal avoided any further wasted effort by Crawley in this case, so dismissal may have actually left Crawley better off than if it had prevailed in its opposition to class certification.

If Plaintiff (through his attorney, Mr. Sharp) had engaged in abusive practices in the litigation, then an award for costs and attorney fees may have been appropriate. *See AeroTech*, 110 F.3d at 1528 (upon a dismissal with prejudice, attorney fees should not be awarded absent an "exceptional circumstance," such as "when a litigant makes a repeated practice of bringing claims and then dismissing them with prejudice after inflicting substantial litigation costs on the opposing party and the judicial system"). But there has

---

[3] This assumes that the limitations period had not run. Although a pending, putative class action (even if the class is ultimately not certified) tolls the limitations period for individual claims, it does not delay the expiration of the limitations period for new class-action claims. *See China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1804 (2018) ("[U]pon denial of class certification, . . . a putative class member, in lieu of promptly joining an existing suit or promptly filing an individual action, [may not] commence a class action anew beyond the time allowed by the applicable statute of limitations."). Of course, if the limitations period had run, there would be no need for any conditions of dismissal because any substantially similar class action would be time-barred. Thus, to the extent the grant of the motion for voluntary dismissal might have created statute-of-limitations issues for any subsequent class action filed against Crawley, granting the motion would appear to benefit Crawley, rather than prejudice it.

20

been no finding, or even evidence, of such practices by Mr. Sharp. In the absence of an applicable fee-shifting provision in a contract or statute, on a dismissal with prejudice a court should not, and cannot, require a party to pay expenses to an adversary simply because the party has decided to abandon good-faith litigation, even if the decision is grounded in an assessment that victory is unlikely. *See Woodard*, 170 F.3d at 1044–45 (rejecting award of attorney fees to defendant in putative class-action case after voluntary dismissal with prejudice); *Colombrito v. Kelly*, 764 F.2d 122, 134 (2d Cir. 1985) (on a voluntary dismissal with prejudice, an award of fees is "appropriate" only in limited circumstances, such as "when there is independent statutory authority for such an award"). A contrary rule would encourage pointless litigation.

*Bayer* also undermines the district court's second ground for finding prejudice: "the specter of bad faith dismissal so that a more favorable forum can be sought." Aplt. App. at 56. If Mr. Sharp could file a new suit with a new plaintiff in a new forum regardless of the outcome of the motion for voluntary dismissal, why would the motion for voluntary dismissal suggest bad faith? (In any event, "forum shopping" is generally an improper basis for imposing conditions on a voluntary dismissal. *See Am. Nat. Bank*, 931 F.2d at 1412 ("The possibility that plaintiffs may gain a tactical advantage by refiling in state court is insufficient to deny a voluntary motion to dismiss without prejudice, especially when state law is involved. Thus, there is no legal prejudice to defendant even if a trial is held in state court." (citation omitted)); *Bechuck*, 814 F.3d at 299 (reversing district court's imposition of condition—similar to Condition 1 here—that any refiled suit be brought in the same court, because "the potential for forum-shopping does not count

as legal prejudice" and "the possibility of tactical advantage should not justify the imposition of a refiling condition").) And as for Plaintiff's "insufficient explanation for the need for a dismissal," Aplt. App. at 56, we do not think the district court could properly rely on this circumstance as indicating bad faith when it declined Plaintiff's offer to provide a fuller explanation in camera. We conclude that the district court's proffered reasons fail to justify the imposition of conditions in this case.

Crawley's claims of prejudice fare no better. It contends:

> [W]ithout the curative measures crafted by the district court, class counsel will be allowed to subject Crawley to enormous expense and then, when a single event they perceive as being unfavorable occurs, run out of court with impunity so they can presumably refile on behalf of another named plaintiff in a different forum, and then subject Crawley to the same enormous expense all over again.

Aplee. Br. at 20–21. But, again, the inevitable consequence of *Bayer* is that Crawley was subject to the risk of repeated class-action claims brought by new plaintiffs regardless of whether the district court granted the motion for voluntary dismissal. And if Crawley was no better off however the district court resolved the motion, it cannot be said that granting the motion would create legal prejudice to Crawley. *Cf. Whalen v. Unit Rig, Inc.*, 974 F.2d 1248, 1253 (10th Cir. 1992) (tactical advantage to plaintiff from dismissal of claim was minor detriment to defendant that did not "reach[] the level of legal prejudice").

Crawley also raises a policy argument, asserting that invalidation of the dismissal conditions "would promote an asymmetric class-action system in which class counsel can continually 'roll the dice' in search of an ideal forum or judge without repercussion."

22

Aplee. Br. at 12.  But *Bayer* explicitly considered this policy concern and rejected it as a reason for altering the rule on nonparty preclusion.  *See* 564 U.S. at 316 (acknowledging but rejecting the defendant's "policy concerns relating to use of the class action device"—namely, "that under [the Supreme Court's] approach [to nonparty preclusion] class counsel can repeatedly try to certify the same class by the simple expedient of changing the named plaintiff in the caption of the complaint" (internal quotation marks omitted)); *id.* (recognizing that its rule rejecting nonparty preclusion "perforce leads to relitigation of many issues, as plaintiff after plaintiff after plaintiff (none precluded by the last judgment because none a party to the last suit) tries his hand at establishing some legal principle or obtaining some grant of relief").  Judge shopping may be a particularly pernicious form of forum shopping, but it too is a necessary consequence of *Bayer*.  *See Smentek v. Dart*, 683 F.3d 373, 376–77 (7th Cir. 2012) (recognizing that *Bayer* allows class-action lawyers to "keep bringing identical class actions with new class representatives until they draw a judge who is willing to certify the class," and that courts have limited ability to address the "judge-shopping problem"; affirming grant of class certification after two previous judges had denied certification of a substantially similar class).[4]  Thus, Crawley's quarrel is with the Supreme Court; Plaintiff's voluntary dismissal of his claim produces no additional legal prejudice.  *See Am. Nat. Bank*, 931 F.2d at 1412 ("Prejudice does not automatically result to defendant from the filing of a second law suit."); *Bechuck*, 814 F.3d at 299 ("[T]he fact that a plaintiff may gain a

---

[4]  Of course, if the later suits are filed in the same judicial district, that court may address judge shopping by reassigning the later suits to the original judge.

23

tactical advantage by dismissing its suit without prejudice and refiling in another forum is not sufficient legal prejudice to justify denying a motion for voluntary dismissal. If the possibility of tactical advantage does not justify the denial of a voluntary dismissal, likewise the possibility of tactical advantage should not justify the imposition of a refiling condition." (internal quotation marks omitted)).

Finally, we note a potential argument for legal prejudice that has not been raised by the district court or Crawley but should be addressed because it is based on a comment in *Bayer*. Trying to calm fears about the prospect of a succession of plaintiffs mounting repetitious class actions until one successful motion "trump[s] or subsume[s] all prior losses," the Court said that it "would expect federal courts to apply principles of comity to each other's class certification decisions when addressing a common dispute." 564 U.S. at 317 (original brackets and internal quotation marks omitted). That comment might support an argument that the dismissal prejudiced Crawley by preventing it from obtaining a favorable certification ruling that would then be followed on the basis of comity by other courts in similar cases brought by clients of Mr. Sharp, even if preclusion doctrine did not apply, thereby justifying a requirement that Mr. Sharp bring any future cases in the same court before the same judge. But there is no "right" to comity; deprivation of a judgment on which to base a comity argument thus does not constitute "legal prejudice." As Judge Bea stated in a concurring opinion, "It is settled law that the decision to apply principles of comity is discretionary, not mandatory." *Baker v. Microsoft Corp.*, 797 F.3d 607, 621 (9th Cir. 2015) (Bea, J., concurring), *rev'd on other grounds and remanded*, 137 S. Ct. 1702 (2017). And the notion of comity in *Bayer*

24

appears to be a weak one, since the Supreme Court in that case did not affirm the lower-court injunction that required the court in the second case to follow the class-certification ruling by the first court. *See Smentek*, 683 F.3d at 375–76 (noting that "the version of comity announced in dictum in [*Bayer*] is novel," as the Supreme Court cited no similar circumstance). It would be surprising if a state court were expected to deny class certification just because a federal court had (and vice versa, if the first court to rule had been the state court), given that the standards and procedures for class certification can differ so much between the federal and state courts. And if the first and second case were both in federal court, we do not see why one judge should be more deferential to another judge on a matter of class certification than on other issues. We agree with the Seventh Circuit that, absent further guidance from the Supreme Court, "[w]e are left with the weak notion of 'comity' as requiring a court to pay respectful attention to the decision of another judge in a materially identical case, but no more than that." *Id.* at 377. What is required is, at most, that the second "judge g[i]ve plausible reasons for . . . disagreement." *Id.* This constraint on future courts is too limited to be the foundation for "legal prejudice."

Because Crawley has not identified any legal prejudice it would suffer from the dismissal, the imposition of conditions was an abuse of discretion. *See Bechuck*, 814 F.3d at 299 ("Absent evidence of legal prejudice to [the defendant] from a Rule 41(a)(2) dismissal that contains no conditions, we cannot sustain the refiling restriction. . . . The court abused its discretion in attaching the filing condition to its Rule 41(a)(2) dismissal."); *Cty. of Santa Fe*, 311 F.3d at 1047 ("The purpose of [Rule [41(a)(2)] is

25

primarily to prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions." (internal quotation marks omitted)).[5]

### C. Remedy

There remains the question of remedy. Mr. Sharp asks that we reverse the portion of the district court's order imposing the conditions and order entry of a judgment simply granting the motion for voluntary dismissal. Crawley, in contrast, urges us to remand so that the district court can reassess whether to impose other conditions or whether, absent the conditions, to grant the motion for voluntary dismissal at all. We agree with Mr. Sharp. Crawley has failed to point to any legitimate ground—a showing of legal prejudice arising from the dismissal—for imposing conditions on the dismissal, a not uncommon circumstance for a voluntary dismissal with prejudice. Because a showing of such prejudice is a prerequisite to the imposition of any condition under Rule 41(a)(2), *see Am. Nat. Bank*, 931 F.2d at 1412, we see no reason to remand this case for further consideration. The only proper action is to affirm the grant of the Rule 41(a)(2) motion but remove the two challenged conditions, Conditions 1 and 3. We do not disturb

---

[5] Mr. Sharp argues that Condition 1 is an abuse of discretion under Rule 41(a)(2) because it is improper to impose such onerous restrictions on him when the court explicitly found that "plaintiff's counsel hasn't engaged in vexatious behavior against [Crawley]." Aplt. App. at 58. We might have had to consider the effect of Condition 1 on Mr. Sharp had Crawley made the threshold showing that it suffered legal prejudice from the voluntary dismissal of this case under Rule 41(a)(2). *See Am. Nat. Bank*, 931 F.2d at 1412 ("The district court . . . should impose only those conditions which actually will alleviate harm to the defendant."). But since we have concluded that Crawley has failed to make the threshold showing required to support any Rule 41(a)(2) conditions of dismissal, Condition 1 fails at this initial stage and we do not need to consider Mr. Sharp's equitable abuse-of-discretion argument further.

Condition 2 because it is not challenged on appeal.  Accordingly, there is no need to remand.

## III.    CONCLUSION

Crawley's motion to dismiss is **DENIED**.  We **REVERSE** the portion of the district court's order imposing Conditions 1 and 3 and **REMAND** to the district court with instructions to enter judgment accordingly.