**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 15, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT
_____

UNIVERSITAS EDUCATION, LLC,

     Petitioner - Appellee,

v.

NOVA GROUP, INC.; SDM HOLDINGS, LLC,

     Respondents.

------------------------------

PHOENIX CHARITABLE TRUST,

     Interested Party - Appellant,

v.

AVON CAPITAL, LLC, a Connecticut limited liability company,

     Intervenor,

and

ASSET SERVICING GROUP, LLC,

     Garnishee.

------------------------------

RYAN T. LEONARD,

     Receiver.

No. 25-6073

_____

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:14-FJ-00005-HE)**

_____

Jeffery R. Sandberg of Palmer Lehman Sandberg, PLLC, Dallas, Texas, for Interested-Party-Appellant Phoenix Charitable Trust.

Joshua C. Greenhaw of Mee Hawkings Greenhaw & Cotner, PLLP, Oklahoma City, Oklahoma (Joseph L. Manson, III of Law Offices of Joseph L. Manson III, Alexandria, Virginia, with him on the briefs) for Petitioner-Appellee.

_____

Before **HARTZ**, **KELLY**, and **TYMKOVICH**, Circuit Judges.

_____

**HARTZ**, Circuit Judge.

_____

This is an appeal by a nonparty of three orders issued by the district court. We dismiss the appeal because the nonparty lacks standing to raise its challenges to the three orders.

## I. BACKGROUND

Universitas Education, LLC was the sole beneficiary of $30 million worth of life-insurance policies held in Charter Oak Trust, which was formed by Daniel Carpenter. In June 2008 the insurer paid out the policy proceeds plus interest to Charter Oak. Universitas is still trying to fully recover that money. By 2010, Carpenter controlled "hundreds" of "shell entities," which he used "to hide assets from" Universitas. *Universitas Educ., LLC v. Nova Grp., Inc.* (*Universitas I*), No. 11CV1590-LTS-HBP, 2014 WL 3883371, at *2 (S.D.N.Y. Aug. 7, 2014). Carpenter has been convicted of fraud, and Universitas has obtained a judgment in New York

2

federal district court enforcing a favorable arbitration award against various Carpenter shell companies through which he has funneled his ill-gotten gains.

Universitas registered (and later needed to reregister) the New York judgment in the United States District Court for the Western District of Oklahoma and obtained a judgment against several Carpenter entities, including Avon Capital, LLC (Avon). Avon is the owner of SDM Holdings, LLC, which is incorporated in Oklahoma (SDM-OK). This court affirmed the judgment for Universitas and the authorization of a receivership over Avon. *See Universitas Educ., LLC v. Avon Cap., LLC* (*Universitas II*), 124 F.4th 1231, 1238 (10th Cir. 2024). The receiver was directed to take steps (as appropriate) to preserve Avon's assets.

The appellant, Phoenix Charitable Trust, is apparently a Carpenter entity. Its counsel, Jeffery Sandberg, has been a regular participant in the Carpenter proceedings. Readily available records reveal that he filed an appearance before this court on behalf of Carpenter in an appeal of contempt proceedings against Carpenter, *see* Entry of Appearance and Certificate of Interested Parties at 1, *In re Contempt Proceedings Against Carpenter*, 25-6198 (10th Cir. Dec. 17, 2025), Dkt. No. 5; and he represented various Carpenter entities before the Second Circuit, including Carpenter Charitable Trust, Avon Charitable Trust, Alliance Charitable Trust, and Atlantic Charitable Trust, *see* Oral Arg. Statement at 1, *Universitas Educ., LLC v. Benistar*, 23-1207 (2d. Cir. Dec. 28, 2023), Dkt. No. 65. He also filed an emergency application and a petition for certiorari in the Supreme Court on behalf of Avon. *See* Emergency Appl. to Justice Neil M. Gorsuch by Pet'r. Avon Capital LLC, *Avon*

3

*Cap., LLC v. Universitas Educ., LLC*, No. 24-1126 (U.S. Aug. 6, 2025); Pet. for Writ of Cert., *Avon Cap., LLC v. Universitas Educ., LLC*, No. 24-1126 (U.S. Apr. 28, 2025).

Mr. Sandberg first got involved in the Oklahoma proceedings on behalf of SDM-OK. He continued to file documents on SDM-OK's behalf even after Avon's receiver replaced the manager for SDM-OK. At that point the district court began to strike Mr. Sandberg's continued filings because he lacked permission from SDM-OK's new manager. At the same time, however, the court recognized that there may be "other interested parties" who claim some beneficial interest in SDM-OK or its assets and said that it would allow them to file objections with the court. Aplt. App., Vol. 12 at 2950. Three days later Mr. Sandberg filed Phoenix's first interested-party objection. Phoenix has continued to participate in the district court proceedings through Mr. Sandberg ever since.

On May 21, 2025, the Oklahoma federal court issued three orders: (1) awarding Universitas attorney fees and costs against Carpenter in connection with his violation of certain court orders (the fees order); (2) authorizing the sale of the insurance portfolio belonging to SDM-OK (the sale-of-assets order); and (3) denying Phoenix's motion to vacate an order enjoining Carpenter and his entities from transferring, alienating, concealing, or encumbering any interest in the insurance portfolio and related funds held by SDM-OK (the injunction order). Those orders are the subject of this appeal.

But the appeal has not been brought by any of the parties in the Oklahoma federal-court proceedings. The sole purported appellant is nonparty Phoenix. Appeals by nonparties are unusual and must overcome significant limitations. We need not explore whether Phoenix satisfies those limitations here, however, because regardless of whether Phoenix was a party below, it lacks standing to pursue this appeal. Phoenix has failed to show that it was injured by the fees order or sale-of-assets order, as required for standing under Article III of the Constitution. Nor has it shown that the alleged error in issuing the injunction affected its rights, as required for prudential standing. We therefore need not address the merits of the challenges to the orders.

## II.     DISCUSSION

### A.     The Fees Order

The requirement of Article III standing follows from the limitation of the jurisdiction of the federal courts to Cases and Controversies. *See* U.S. Const. art. III, § 2; *Tennille v. W. Union Co.*, 809 F.3d 555, 559 (10th Cir. 2015). "Constitutional standing has three elements: injury, causation, and redressability." *Frank v. Crawley Petroleum Corp.*, 992 F.3d 987, 993 (10th Cir. 2021) (internal quotation marks omitted). "The injury must be an invasion of a legally protected interest that is concrete and particularized and actual or imminent." *Id.* (internal quotation marks omitted). The standing required by Article III "must be met by persons seeking appellate review, just as it must be met by persons appearing in courts of first instance." *Id.* (brackets and internal quotation marks omitted). As "[t]he party

5

invoking this court's jurisdiction," Phoenix "bears the burden of establishing these elements." *Tennille*, 809 F.3d at 559.

The fees order requires Carpenter to pay Universitas its attorney fees and costs incurred in connection with his violation of court orders restricting interference with receivership assets. Phoenix argues that the district court erred in entering the fees order because (1) the fee award is a double recovery of the fees paid by the receivership estate to the receiver, and (2) the court could not exercise personal jurisdiction over Carpenter because he was not a party and had not been served with a summons. Phoenix also challenges all three orders on the ground that the district court lacked subject-matter jurisdiction and personal jurisdiction over Avon and SDM-OK.

Phoenix obviously lacks Article III standing with respect to the fees order. We fail to see, and Phoenix has not explained, how Phoenix could be injured by the order that *Carpenter* pay the mandated costs and fees. *See* Aplt. App., Vol. 28 at 6777 n.1 (the fees order grants recovery "only against Carpenter"). Without an injury, Phoenix lacks the constitutional standing to appeal.

### B.    The Sale-of-Assets Order

Resolving Article III standing with respect to the sale-of-assets order takes a bit more work. That order imposes a constructive trust on SDM-OK's insurance portfolio and authorizes and directs Avon's receiver to have SDM-OK's manager sell the portfolio or transfer it to the receivership so that the receiver can sell it himself, whichever is more efficient. Phoenix contends that the district court erred in entering

the order because Universitas has already collected more than Avon owed it under the judgment.

Phoenix claims that it has standing to challenge the sale-of-assets order because it has an interest in the insurance portfolio through the following series of alleged transactions: Phoenix became a member of SDM-OK sometime before 2017. Then, on June 30, 2017, SDM-OK merged into a different entity with the same name, SDM Holdings, LLC, but organized in Connecticut (SDM-CT), which had been formed a day or so earlier. The merger caused SDM-OK to cease to exist, leaving only SDM-CT as the "Surviving LLC." Aplt. App., Vol. 13 at 2967. And Phoenix, as an owner of SDM-CT, now owns the assets of former SDM-OK that are the subject of Universitas's collection efforts.

In support of this account, Phoenix offers a "listing of filings from the Connecticut Secretary of State's office," a purported copy of the 2017 merger agreement between SDM-OK and SDM-CT, and purported "copies of the SDM-OK and SDM-CT tax returns, along with the form K-1s issued to the members of SDM-OK and SDM-CT and reflecting that no form K-1s were issued by SDM-OK or SDM-CT to Avon[]." Aplt. Br. at 17. Phoenix does not explain how it acquired its original claimed membership interest in SDM-OK, but it contends that the tax filings it provided "would be decidedly different if Avon[] was truly in fact the 100% member of SDM-OK or SDM-CT." *Id.* (quoting Aplt. App., Vol. 28 at 6791). These documents were attached to pleadings filed in this case by Phoenix; but the only

7

"authentication" is the unsworn description by Mr. Sandberg in the pleadings to which they are attached.

This account contradicts the record before us in several respects. The claim that Phoenix was a member of SDM-OK runs counter to the representations of counsel for both Avon (in a pleading filed on February 28, 2020) and SDM-OK (in a pleading filed on February 23, 2018) that Avon owned 100% of SDM-OK. And the claim that SDM-OK ceased to exist after merging into SDM-CT in 2017 is inconsistent with a certificate from the Oklahoma Secretary of State (attached to a pleading filed on behalf of SDM-OK on February 23, 2018) showing SDM-OK in good standing as of February 16, 2018.

But even setting aside these inconsistencies, the biggest problem with Phoenix's claim of an interest in SDM-OK's portfolio is that its "evidence" is, at best, speculative. The documents it submitted to support its argument are unauthenticated and are either irrelevant or leave too many unanswered questions. The first document, the listing of filings with the Connecticut Secretary of State, explicitly relates to the Connecticut LLC—SDM-CT, not SDM-OK. The second document, the purported merger agreement, is signed only by Carpenter and apparently has never been filed with the State. By its own terms it would only be "made available for filing" in the public records "if that becomes necessary." Aplt. App., Vol. 13 at 2967. That is to say, it would be filed only if it ever became advantageous that there had been a merger. Accordingly, the district court repeatedly rejected the "notion" that "SDM[-OK] itself no longer exists, based on a purported

8

merger with another Carpenter-controlled entity in 2017." Aplt. App., Vol. 22 at

5116. Phoenix does not explain why this finding was erroneous.

Phoenix's collection of tax returns is similarly unhelpful to its claims. The

documents purport to be federal tax forms of "SDM Holdings, LLC" from 2010–2015

and 2017–2019 and Connecticut state-tax forms of the same entity from 2017–2019.

None are signed. None indicate that they were ever filed. Pages are missing or

completely redacted. The 2016 tax forms are inexplicably omitted. And we cannot

tell which of the at-least-two different entities named "SDM Holdings, LLC" filed

them. The filing entity[1] lists its address as 35 Tower Lane, Avon, Connecticut, but we

cannot infer from the Connecticut address that this "SDM Holdings, LLC" is SDM-

CT because Avon, a Wyoming LLC, also had a Connecticut address. If the filing

entity is SDM-CT (which, according to the Connecticut Secretary of State, is

registered at 10, not 35, Tower Lane), then the fact that the earliest tax document

dates back to 2010 is inconsistent with Phoenix's claim that SDM-CT was formed in

June 2017. And if these are SDM-OK's tax documents, then the 2019 documents are

inconsistent with SDM-OK supposedly ceasing to exist after the 2017 merger. We

refuse to speculate that these alleged tax returns can tell us anything about who were

the members of which LLC at what time, particularly in light of the history of this

dispute, including the finding by the New York federal court that Carpenter had

---

[1] It appears that all the tax documents refer to the same entity because each form bears the same filer's taxpayer identification number. All but the last three digits have been redacted from every document and on some the number is fully redacted, but when it appears it ends in -1, -91, or -691.

controlled "hundreds" of "shell entities," which he used "to hide assets from" Universitas, *Universitas I*, 2014 WL 3883371, at \*2, and this court's previous observation that Carpenter had a penchant for laundering the proceeds of his frauds "through a vast web of interconnected shell companies." *Universitas II*, 124 F.4th at 1238.

In short, Phoenix has utterly failed to support its claim that it has an interest in the SDM-OK insurance portfolio. It has therefore failed to meet its burden to demonstrate its injury and accompanying Article III standing to appeal the sale-of-assets order.

### C.    The Injunction Order

Finally, Phoenix challenges the injunction order, which denied Phoenix's motion to vacate a prior order enjoining "Daniel Carpenter and all persons or entities claiming by, through, or under him, or acting on his behalf, directly or indirectly, or otherwise subject to his control" from (1) "transferring, alienating, concealing, or encumbering any interest in the insurance portfolio and related funds now held by SDM[-OK], or attempting to do so," and from (2) "any act or attempt to interfere with [the] administration of that portfolio consistent with instructions from the current manager of SDM[-OK] as designated by the receiver." Aplt. App., Vol. 22 at 5332. Phoenix contends that the court erred in entering the injunction order because Carpenter was not given notice of Universitas's request for injunctive relief.

Nonparties injured by a court's orders may have standing to challenge them if they are sufficiently affected by the judgment. For example, nonparties who are

10

injured by an injunction have been found to have standing to appeal the injunction. *See United States v. Kirschenbaum*, 156 F.3d 784, 794 (7th Cir. 1998) ("[N]on-parties who are bound by a court's equitable decrees have a right to move to have the order dissolved"); *In re Piper Funds, Inc., Institutional Gov't Income Portfolio Litig.*, 71 F.3d 298, 301 (8th Cir. 1995) ("A nonparty normally has standing to appeal when it is adversely affected by an injunction").

But even if Phoenix faces sufficient injury from the injunction that it has Article III standing to challenge the injunction, it lacks prudential standing. "[T]he doctrine of prudential standing requires that even a plaintiff who meets the constitutional requirements for standing must also assert its own rights, rather than those belonging to third parties." *Citizens' Comm. to Save Our Canyons v. U.S. Forest Serv.*, 297 F.3d 1012, 1026 (10th Cir. 2002) (internal quotation marks omitted). If we dismiss for lack of prudential standing, we need not address Article III standing. *See Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (assuming without deciding that the plaintiffs had Article III standing and "address[ing] [and answering in the negative] the alternative threshold question whether they have standing to raise the rights of others").

Phoenix does not complain that it was not given proper notice before issuance of the injunction. And it advances no argument why it should be allowed to protest the injunction because of a violation of the rights of another person—namely, Carpenter. *See Citizens' Comm. to Save Our Canyons*, 297 F.3d at 1025 (suggesting that plaintiff, who had notice of a planned land exchange between the government

11

and a private party, lacked prudential standing to complain that "other interested members of the public did not receive notice" of the exchange); *Martin v. Occupational Safety & Health Rev. Comm'n*, 941 F.2d 1051, 1058 (10th Cir. 1991) (intervenor-respondent who had actual notice of an agency's interpretation of its regulation "lack[ed] standing to challenge the regulation on behalf of others without notice"). When asked at oral argument to explain what Phoenix's interest was in challenging the injunction order, Mr. Sandberg responded that Phoenix has "an interest in not seeing injunctions entered without the Rules of Civil Procedure being complied with." Oral Arg. at 09:52, *Universitas Educ., LLC v. Phoenix Charitable Tr.*, No. 25-6073 (10th Cir. Jan. 22, 2026), https://www.ca10.uscourts.gov/sites/ca10/files/oralarguments/25-6073.mp3. But if that is a sufficient interest to convey standing, we can expect an onslaught of appeals by Civil Procedure professors on our future dockets.

## III.    CONCLUSION

Phoenix has not met its burden to establish its standing to appeal. We **GRANT** Phoenix's motion to supplement the record and **DISMISS** the appeal.