**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**October 31, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ARTHUR W. MIRES, Trustee of the
Monte H Goldman Revocable Living
Trust,

Plaintiff - Appellant,

v.

UNITED STATES OF AMERICA,

Defendant-Appellee.

No. 05-6186

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. NO. CIV-03-982-R)**

---

Margaret K. Myers (Earl D. Mills with her on the briefs), The Mills Law Firm,
Oklahoma City, Oklahoma, for Plaintiffs-Appellants.

Joan I. Oppenheimer, United States Department of Justice (Eileen J. O'Connor,
Assistant Attorney General; John C. Richter, United States Attorney; Richard
Farber, United States Department of Justice, with her on the brief) for Defendant-
Appellee.

---

Before **KELLY**, **HOLLOWAY**, and **McCONNELL**, Circuit Judges.

---

**McCONNELL**, Circuit Judge.

---

When the estate of Alfred Goldman ("the Estate") filed this tax refund suit in July 2003, it had neither paid the taxes it was disputing nor sought administrative relief before the Internal Revenue Service. The United States accordingly sought dismissal under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction. Rather than suffer dismissal, the Estate paid the taxes, filed a claim before the IRS, and, with the government's consent, amended its complaint to allege compliance with these two jurisdictional prerequisites. The district court then considered the pending cross-motions for summary judgment and ruled against the Estate.

After losing on the merits, the Estate now appeals from the district court's judgment, arguing that the judgment is void because the jurisdictional defect that existed when the suit began was incurable. We disagree and hold that under the circumstances of this case, the Estate cured the jurisdictional defect. We therefore **AFFIRM** the district court's judgment.

## I. Standard of Review

The Estate does not challenge the merits of the district court's order. Rather, it asks us to vacate that order on the grounds that the court lacked subject matter jurisdiction. Whether a district court had subject matter jurisdiction is a question of law that we review *de novo*. *Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 852 (10th Cir. 2005).

-2-

## II. Stipulated Material Facts and Procedural History

This case stems from an earlier lawsuit between the two scions to a grocery store shopping cart fortune. Alfred and Monte Goldman, both now deceased, were the only children of S. N. Goldman. They inherited their father's fortune through various trusts and business enterprises. The inheritance provided for equal shares, and the brothers considered themselves equal owners of the various businesses.

One of their businesses was Primco Management Company, an Oklahoma corporation whose stock was held equally by the brothers' revocable living trusts. Primco was the nerve center for the Goldmans' other businesses: it performed administrative services such as bookkeeping, filing tax returns, collecting rent, and hiring attorneys and accountants for the other entities.

Following their parents' deaths, Monte and Alfred's relationship deteriorated until Alfred eventually appropriated nearly all of their assets—approximately $23 million—for his personal use. In April 1990, Monte responded by suing Alfred and various Primco employees in Oklahoma state court. The parties settled that suit in July 1994 after incurring more than $2.5 million in legal fees and $352,500 in accounting fees, all of which Primco paid. Primco listed those fees as deductions on its 1990, 1991, and 1992 tax returns.

The IRS disallowed the lion's share of those deductions. This reduced the amount of distributable net losses that Alfred Goldman could claim as a Primco

shareholder on his 1990–92 tax returns and led to a corresponding increase in Alfred's personal federal income tax liability. In 1994, Alfred Goldman filed amended federal tax returns for those years and claimed as personal deductions the attorney's fees and accounting fees incurred in the state court litigation against his brother. The IRS denied those deductions and assessed additional taxes accordingly. Alfred then passed away.

Instead of paying the additional taxes, the Estate filed this suit in 2003 challenging the IRS's disallowance of those deductions.[1] In response to the government's motion to dismiss for lack of subject matter jurisdiction, the Estate took the only possible step to prevent dismissal: it paid the taxes assessed against Mr. Goldman for 1990–92 and petitioned the IRS for a refund on Mr. Goldman's behalf. Three days later, the IRS disallowed the Estate's claim. The Estate then moved for leave to file an amended complaint and joint stipulation of facts. The district court granted the motion, and the complaint and stipulation were amended as follows:

> 1. On or about October 22, 2004, Plaintiff Julian P. Kornfeld, Personal Representative for the Estate of Alfred D. Goldman, paid federal income taxes assessed against Alfred D. Goldman for the tax

---

[1]The district court said that "[t]he Complaint was initially filed on behalf of six trusts established for the benefit of Monte Goldman, five trusts established for the benefit of Alfred Goldman, and the Estate of Alfred Goldman. As the case has progressed, it has become apparent that the Plaintiffs are now asserting claims for refund only on behalf of the estate of Alfred Goldman." Appellant's App. 47. The parties do not contest this finding on appeal.

years 1990, 1991, and 1992, in the amounts of $564,654.44, $342,866.03 and $251,044.35, respectively.

2. On or about October 22, 2004, Plaintiff Julian P. Kornfeld, Personal Representative for the Estate of Alfred D. Goldman, filed [Form] 1040X, seeking a refund of the income tax assessments paid for the tax years 1990, 1991, and 1992.

3. By letter dated October 25, 2004, the Internal Revenue Service disallowed the Claims for Refund filed on behalf of Alfred D. Goldman.

4. This Court can now exercise jurisdiction over the refund action of Alfred D. Goldman and his Estate in accordance with 28 U.S.C. Section 1346(a)(1).

5. Counsel for Defendant does not object to the amendment of the Complaint or the Joint Stipulation of Facts.

Appellee's Supp. App. 9–10. The district court's order granting summary judgment in favor of the United States referred to the stipulated amendment:

The Plaintiffs allege that the alleged jurisdictional defect has been "cured" by the payment of the disputed taxes, and have filed an "Amendment to Stipulation of Material Facts Not in Dispute" reciting that the taxes assessed against Alfred D. Goldman have now been paid in full. The Government does not dispute the Plaintiffs' assertion that the assessed taxes have now been paid, and thus has cured the asserted jurisdictional defect.

Appellant's App. 63–64. By all accounts, the Estate was satisfied that the district court had jurisdiction.

The Estate adhered to this position until the district court entered judgment on the merits in favor of the United States and denied the Estate's Rule 60(b)(2) motion for reconsideration based on allegedly newly discovered evidence. When the district court denied that motion, the Estate appealed to this Court and asserted for the first time that the district court's judgment was void because (1)

the court lacked jurisdiction when the suit began, and (2) subsequent events could not cure that jurisdictional shortcoming.

## III.  Discussion

Few tenets of federal jurisprudence are more firmly established than the principle that "federal courts . . . are courts of a limited jurisdiction." *Turner v. Bank of N. Am.*, 4 U.S. (4 Dall.) 8, 8 (1799).  "They possess only that power authorized by Constitution and statute . . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  To ensure its Article III power is exercised properly, a federal court must, "in every case and at every stage of the proceeding, satisfy itself as to its own jurisdiction." *Citizens Concerned for Separation of Church and State v. City and County of Denver*, 628 F.2d 1289, 1301 (10th Cir. 1980).  So weighty is this concern that "a litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action"—even on appeal, as the Estate does here. *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004); *see also Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1240 (10th Cir. 2001) ("[S]o long as a case is pending, the issue of federal court jurisdiction may be raised at any stage of the proceedings either by the parties or by the court on its own motion." (internal quotation marks omitted)).

The Estate invoked the district court's subject matter jurisdiction under 28 U.S.C. § 1346(a)(1), which grants district courts original jurisdiction in "[a]ny civil action against the United States for the recovery of . . . any sum alleged to

-6-

have been excessive . . . under the internal-revenue laws." *Id.* Two prerequisites must be met before a district court has subject matter jurisdiction under § 1346(a)(1). First, a plaintiff must have fully paid the challenged tax assessment. *Flora v. United States*, 357 U.S. 63, 75–76 (1958); *Ardalan v. United States*, 748 F.2d 1411, 1413 (10th Cir. 1984). Second, a plaintiff must have filed a valid refund claim with the IRS, and the IRS must have denied the claim or six months must have passed since the claim was filed with no IRS response. 26 U.S.C. §§ 6532(a)(1), 7422(a).

The Estate satisfied these two requirements after filing suit and presumed that it had cured the obvious jurisdictional defect by doing so. Now, after losing on the merits, the Estate argues based on *McNeil v. United States*, 508 U.S. 106 (1993), that it could not have cured the defect. In *McNeil*, the Supreme Court affirmed the dismissal of a *pro se* prisoner's Federal Tort Claims Act complaint because the prisoner exhausted his administrative remedies after filing his complaint. *See id.* at 107–09. The Estate suggests that *McNeil* forecloses the possibility of curing a lack of subject matter jurisdiction during a suit's pendency.

We do not read *McNeil* so broadly. The Supreme Court expressly stated that it "assume[d] that . . . nothing done by petitioner after the denial of his administrative claim . . . constituted the commencement of a new action." *Id.* at 110. That statement alone distinguishes this case from *McNeil*. After the IRS denied Mr. Goldman's refund claim, he sought permission to file—and, with the

-7-

government's consent and district court's permission, did file—an amended complaint that alleged completion of the jurisdictional prerequisites. Appellee's Supp. App. 9–10.

Those facts make this case more analogous to *Mathews v. Diaz*, 426 U.S. 67, 70 (1976), which concerned the constitutionality of statutory residency requirements for Medicare eligibility. One of the Medicare statutes, 42 U.S.C. § 405(g), "establishe[d] [the] filing of an application [for Medicare benefits] as a nonwaivable condition of jurisdiction." *Id.* at 75. One plaintiff filed the required application only "after he was joined in the action." *Id.* The Supreme Court "ha[d] little difficulty" disposing of the government's motion to dismiss for failure to exhaust administrative remedies, because the plaintiff "satisfied this condition while the case was pending in the District Court." *Id.* The Court explained:

> A supplemental complaint in the District Court would have eliminated this jurisdictional issue; since the record discloses, both by affidavit and stipulation, that the jurisdictional condition was satisfied, it is not too late, even now, to supplement the complaint to allege this fact. Under these circumstances, we treat the pleadings as properly supplemented by the Secretary's stipulation that Espinosa had filed an application.

*Id.* These same considerations compel us to hold that Mr. Goldman's representative cured the jurisdictional deficiency while his suit was pending by paying the outstanding taxes, seeking administrative relief from the IRS, and

amending his complaint (with the government's consent and district court's permission) to allege satisfaction of the jurisdictional prerequisites.

We recognize that "[t]he existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989). But like most rules, "this one is susceptible to exceptions." *Id.* One such exception arises when a district court allows an amendment by the parties to cure an exhaustion problem—the precise situation in *Diaz*, 426 U.S. at 75; *Duplan v. Harper*, 188 F.3d 1195, 1199–1200 (10th Cir. 1999); and here.

Of course, this exception does not mean that plaintiffs should habitually neglect Section 1346(a)(1)'s mandates before filing suit. Like the Supreme Court, we expect that in future cases, "the risk that a lawyer will be unable to understand the exhaustion requirement is virtually nonexistent." *McNeil*, 508 U.S. at 113. We hold only that, under the circumstances of this case, the Estate cured the obvious lack of subject matter jurisdiction present when the suit began.

Finally, though "lack of federal jurisdiction cannot be waived or overcome by an agreement of the parties," *Mitchell v. Maurer*, 293 U.S. 237, 244 (1934), the Estate's arguments impress us as particularly specious. The Estate's attorneys represented to the district court (in a pleading subject to Rule 11 of the Federal Rules of Civil Procedure) that it could "now exercise jurisdiction over the refund action of Alfred D. Goldman and his Estate in accordance with 28 U.S.C. Section

1346(a)(1)" because Mr. Goldman's representative had paid the taxes and filed for a refund. Appellee's Supp. App. 10. Because subject matter jurisdiction is a question of law, appellants are not judicially estopped from advocating the diametrically opposite position before this Court. *See Kaiser v. Bowlen*, 455 F.3d 1197, 1204 (10th Cir. 2006). But a heavy dose of skepticism is in order when, after losing on the merits, a party appeals and reverses course on a legal position it successfully maintained in the district court.

We **AFFIRM** the judgment of the district court.