**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**December 31, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

UNIVERSITAS EDUCATION, LLC,

    Petitioner/Judgment Creditor -
Appellee,

v.

AVON CAPITAL, LLC, a Connecticut
limited liability company,

    Respondent/Judgment Debtor,

ASSET SERVICING GROUP, LLC,

    Respondent/Garnishee,

and

SDM HOLDINGS, LLC,

    Respondent/Garnishee - Appellant.

------------------------------

AVON CAPITAL, LLC, a Wyoming
limited liability company,

    Intervenor.

_____

UNIVERSITAS EDUCATION, LLC,

    Petitioner/Judgment Creditor –
Appellee,

Nos. 23-6125 and 23-6167

v.                                                    Nos. 23-6126 and 23-6168

AVON CAPITAL, LLC, a Connecticut
limited liability company,

      Respondent/Judgment Debtor,

and

ASSET SERVICING GROUP, LLC; SDM
HOLDINGS, LLC,

      Respondents/Garnishees.

------------------------------

AVON CAPITAL, LLC, a Wyoming
limited liability company,

      Intervenor - Appellant.
_____

UNIVERSITAS EDUCATION, LLC,

      Petitioner/Judgment Creditor -
      Appellee,

v.                                                    Nos. 24-6066 and 24-6033

AVON CAPITAL, LLC, a Connecticut
limited liability company,

      Respondent/Judgment Debtor,

and

ASSET SERVICING GROUP, LLC; SDM
HOLDINGS, LLC,

      Respondents/Garnishees.

2

------------------------------

AVON CAPITAL, LLC, a Wyoming limited liability company,

     Intervenor - Appellant.

------------------------------

RYAN T. LEONARD, Esq.,

     Receiver.

_____

UNIVERSITAS EDUCATION, LLC,

     Petitioner/Judgment Creditor – Appellee,

v.

AVON CAPITAL, LLC, a Connecticut limited liability company,

     Respondent/Judgment Debtor,

 and

ASSET SERVICING GROUP; SDM HOLDINGS, LLC,

     Respondents/Garnishees.

------------------------------

AVON CAPITAL, LLC, a Wyoming limited liability company,

     Intervenor - Appellant.

_____

No. 24-6006

3

**Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. No. 5:14-FJ-00005-HE)**

_____

Francis M. Schneider (Alan L. Rupe, with him on the briefs), Lewis Brisbois Bisgaard & Smith LLP, Wichita, Kansas, for Appellant Avon Capital.

Jeffrey R. Sandberg, Palmer Lehman Sandberg, PLLC, Dallas, Texas, for Appellant SDM Holdings, LLC.

Joseph Karam, Alexandria, Virginia (Joseph L. Manson III, Law Offices of Joseph L. Manson, III, Alexandria, Virginia, on the briefs), for Petitioner-Appellee Universitas Education, LLC.

_____

Before **TYMKOVICH**, **MORITZ**, and **CARSON**, Circuit Judges.

_____

**TYMKOVICH**, Circuit Judge.

_____

Universitas Education, LLC seeks to recover funds it lost in an elaborate insurance fraud scheme. The underlying litigation occurred in the Southern District of New York, leading to a civil judgment against multiple defendants. Among the corporate entities allegedly used to perpetrate the fraud was Avon Capital, LLC and several of its affiliates located in Oklahoma, Nevada, and Wyoming. In its efforts to collect on the judgment, Universitas sought to garnish a $6.7 million insurance portfolio held by SDM Holdings, which Avon owns, located in Oklahoma. Universitas claimed the portfolio was the fruit of stolen funds and that Avon and its sister subsidiaries were shell companies of the primary defendant.

4

After registering the judgment in Oklahoma, Universitas sought summary judgment on its entitlement to the funds.  The district court entered summary judgment for Universitas and authorized a receivership over Avon and SDM.  Avon and SDM appealed, claiming a myriad of procedural defects and disputes on the merits.  On appeal, however, this court vacated the summary judgment order on mootness grounds, without discussing the merits of summary judgment.  We determined that the district court could not rely on the registered judgment because its five-year effective term expired before the district court had entered its order.  *Universitas Educ. LLC v. Avon Cap. LLC* (*Universitas I*), No. 21-6044, 2023 WL 5005654 (10th Cir. Aug. 4, 2023) (unpublished). We remanded for further proceedings.

This appeal is about the district court's jurisdiction and its orders upon remand. After Universitas re-registered the New York judgment, but before the first appeal was concluded, the district court re-entered summary judgment in its favor, and reauthorized the receivership over Avon and SDM.  Avon and SDM challenge that ruling, claiming the district court lost jurisdiction over the claims and that Universitas did not properly revive them as required by Oklahoma law.  They claim that the district court's only option was to dismiss the suit and that Universitas was required to file a new lawsuit and re-register the New York judgment.

We affirm.  The district court retained jurisdiction during the appeal to preserve the status quo, including the exercise of equitable powers over Avon and SDM.  The district court properly re-affirmed its summary judgment and receivership orders after it

5

received our mandate,[1] correctly concluding that Universitas did not need to file a new cause of action.

## I.    Background

Daniel Carpenter devised and carried out an insurance fraud scheme that, among other wrongdoing, defrauded Universitas of thirty million dollars in life insurance proceeds. Mr. Carpenter's scheme involved acquiring third-party life insurance policies from unsuspecting beneficiaries with the promise to hold them in trust, but withholding the benefits when they became due, and laundering the money through a vast web of interconnected shell companies. This fraud was uncovered, and Mr. Carpenter was convicted for his crimes.[2]

In its efforts to recover losses, Universitas filed a civil lawsuit in the Southern District of New York, naming as defendants a group of Mr. Carpenter's corporate entities. One of those entities was Avon Capital, LLC, a Connecticut company.

---

[1] A mandate is both a superior court's instructions to a lower court and a jurisdictional event by which jurisdiction transfers from the superior court back to the lower court. *Infra* (II)(A)(1).

[2] Since then, cases involving Mr. Carpenter, his fraudulent activities, and attempts to collect on debts against him have littered the pages of federal reporters. *E.g. Universitas Educ. LLC v. Grist Mill Cap'l LLC*, No. 21-2690, 2023 WL 2170669 (2d Cir. Feb. 23, 2023), *cert. denied*, 114 S. Ct. 184 (2023); *United States v. Bursey*, 801 F. App'x 1 (2d Cir. 2020); *United States v. Carpenter*, 941 F.3d 1 (1st Cir. 2019); *Universitas Educ., LLC v. Nova Grp., Inc.*, 784 F.3d 99 (2d Cir. 2015); *United States v. Carpenter*, 494 F.3d 13 (1st Cir. 2007).

Universitas eventually secured a judgment in that suit for $30.6 million in 2014, of which

$6.7 million was against Avon Capital, LLC.

It soon became clear that Avon would be difficult to pin down.  As we recounted

in *Universitas I*

> Between 2006 and 2007, three Avon [Capital] LLC entities were formed: a Nevada LLC ("Avon-NV") in June 2006, a Connecticut LLC ("Avon-CT") in November 2006, and Avon-WY in May 2007.  Each of these Avon entities was ninety-nine percent owned by Carpenter Financial and one percent owned by Caroline Financial—both of which were controlled by Daniel Carpenter.
>
> Universitas was the sole beneficiary of two life insurance policies totaling $30 million.  Carpenter dispersed Universitas's $30 million in life insurance policies among his shell entities via a complex series of transactions.  One of these transactions was a $6,710,065.92 transfer from Grist Mill Capital, a shell entity controlled by Carpenter, to Avon-NV's TD Bank account.  Although Avon-NV's tax identification number was used to open the TD Bank account, Avon-CT was the entity involved with the . . . transactions.
>
> Meanwhile, Avon-WY acquired a one hundred percent membership interest in SDM.  The payments for the acquisition were made from Avon-NV's TD Bank account on behalf of Avon-WY.  Although Avon-WY was administratively dissolved for failure to maintain a registered agent during the transactions, Avon-WY was the signatory on the SDM purchase agreement.

2023 WL 5005654, at *2 (internal quotation marks omitted).

Universitas registered the New York judgment in the Western District of

Oklahoma on November 7, 2014.  It sought to garnish the benefits of Avon and SDM's

life insurance portfolio.  Avon-WY intervened, arguing that it was not the Avon Capital

7

LLC identified by the New York Judgment.  The parties disputed whether the various

Avon entities were distinct corporations, or mere alter egos of each other.

The district court referred cross-motions for summary judgment, along with

follow-on evidentiary motions, to the magistrate judge, who issued a 73-page Report and

Recommendation finding that the entities were "one and the same for purposes of their

liability to Universitas."   App., Vol. 8 at 1800.   The magistrate judge also determined

that, because Avon-WY fraudulently acquired the SDM insurance portfolio using stolen

funds (provided by Avon-NV), the insurance portfolio was subject to garnishment.

The district court reviewed the magistrate judge's recommendations and agreed

with all of them, granting summary judgment to Universitas over the objections of Avon

and SDM.  App., Vol. 8 at 1931.  The district court traced the fraudulently transferred

funds to Avon-WY's acquisition of SDM Holdings life insurance portfolio and pierced

Avon-WY's corporate veil to allow Universitas to execute the judgment against the

insurance portfolio.  In an order issued February 11, 2021, the district court enjoined

Avon-WY from transferring or disbursing any of its interests in SDM and placed it into a

receivership under Oklahoma law.

The problem is under Oklahoma Statute § 12-735(B), "[a] judgment shall become

unenforceable and of no effect if more than five (5) years have passed from the date . . .

[t]he last garnishment summons was issued."   By the time the district court entered its

order, more than five years had passed since Universitas had filed the New York

judgment in Oklahoma—the judgment expired in December 2020 and the district court's

8

order issued February 2021. The New York judgment remained valid, but Universitas did not refile it in Oklahoma before the five-year period ended.

On appeal in *Universitas I*, SDM and Avon argued that the district court lost jurisdiction when the judgment expired. We agreed, even though Universitas had refiled its judgment during the appeal, but not until *after* the district court entered summary judgment. The panel found that since Universitas had not refiled its New York judgment before the summary judgment order was entered, under Oklahoma law the court lost the jurisdictional basis for the claims. App., Vol. 16 at 3887. The panel thus found the appeal was moot because of the jurisdictional defect and vacated the district court's orders.

On the same day as our ruling (July 13, 2023) Universitas renewed its summary judgment and receivership requests based on the *refiled* New York judgment. In the same order the court set a status conference to address the effect of the panel's opinion, but "in the interim," it "preliminarily" readopted its order enjoining Avon. *Id.* It ruled a preliminary injunction was necessary to "freeze the status of all parties and their related interests in SDM, based on the facts and circumstances previously addressed, pending the pretrial conference." *Id.* at 1892 n.1.

At the status conference on August 15, the district court made clear that although the mandate had not yet been returned to the court, it "didn't want to get in a situation where we had the status quo upset until the case was back here" and to "address some of those preliminary matters and to make sure we don't have some untoward developments

9

simply based on actions taken in the gaps between the time that the Court can address them and when the case is returned from the circuit." App., Vol. 17 at 4220–21.  After the conference, the court issued an order "effective as of the issuance of the mandate" and "subject to the reacquisition of subject matter jurisdiction," permanently readopting its vacated order, including summary judgment and injunctive relief.  *Id.* at 4083–84.  The district court also re-appointed the receiver in a later order.

While this was going on, Avon and SDM filed petitions for appellate rehearing in *Universitas I.*  On August 4, 2023, we granted in part and denied in part the rehearing petitions and filed an amended opinion without additional briefing or argument.  The amended opinion deleted language that confirmed "Universitas's refiling of the expired judgment . . . makes the judgment presently enforceable under [*Taracorp, Ltd. v. Dailey,* 419 P.3d 217 (Okla. 2018)]," and remanded to the district court to conduct "further proceedings."  *Id.*  The amended opinion did not change the central holding or outcome of the appeal.   After we filed our amended opinion, the district court reaffirmed and reentered its previous orders "effective as of the issuance of the mandate."  Avon and SDM appealed once the mandate issued and that order became final.

10

The sequencing of these events can be seen more clearly on a timeline:



## II.    Analysis

Avon and SDM raise a combined cascade of nineteen issues on appeal that can be sorted into jurisdictional arguments and merits arguments.  We address jurisdictional issues first, before proceeding to the merits.

### A.    *Jurisdiction*

"A federal court is clothed with power to secure and preserve to parties the fruits and advantages of its judgment or decree."  *Berman v. Denver Tramway Corp.*, 197 F.2d 946, 950 (10th Cir. 1952).  And in post-judgment collection or garnishment proceedings, a district court properly possesses jurisdiction to enforce a federal judgment.  *Peacock v. Thomas*, 516 U.S. 349, 356 (1996) (Ancillary jurisdiction is appropriate in "subsequent

proceedings for the exercise of a federal court's inherent power to enforce its judgments."); *see also* 13 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3523.2 (5th ed. 2024) (Stating that ancillary jurisdiction "include[s] those acts that the federal court must take in order properly to carry out its judgment on a matter as to which it has jurisdiction.").

Federal law establishes some of the steps that a judgment creditor must take to collect in a jurisdiction different from the original action. Under 28 U.S.C. § 1963, "[a] judgment in an action for the recovery of money or property entered in any . . . district court . . . may be registered by filing a certified copy of the judgment in any other district." Once registered in a new district, the judgment "shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner." *Id.*

But beyond this federally authorized registration process establishing Article III jurisdiction, state procedure takes over. Under Federal Rule of Civil Procedure 69, "[t]he procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located." And Rule 69 "requires only substantial compliance with the procedural provisions of any controlling state statutes or case law." *Bartch v. Barch*, 111 F.4th 1043, 1057 (10th Cir. 2024).

Under Oklahoma law, once registered in Oklahoma a foreign judgment is enforceable for five years. Okla. Stat. § 12-735(B). But so long as the original judgment

12

remains enforceable in its home jurisdiction (here, New York), § 12-735 allows that judgment to be refiled, starting a new five-year period of enforceability. *Taracorp*, 419 P.3d 217. New York judgments can be registered for up to 20 years.

In sum, the district court's jurisdiction in this case was established by federal law and guided by state procedure. Yet Avon and SDM attack jurisdiction on three grounds based on *Universitas I*: (1) they question the district court's authority to issue orders *during* the prior appeal; (2) they insist the case should have been dismissed in its entirety *after* the mandate issued in *Universitas I*; and (3) they argue jurisdiction could not be *cured* under Oklahoma law by a refiled judgment.

We discuss each argument in turn and ultimately find none persuasive.

### 1. *Jurisdiction Before the* Universitas I *Mandate*

Avon and SDM first argue that once their notices of appeal were filed in *Universitas I*, the district court lacked jurisdiction to enter any orders until this court returned its mandate.

"[T]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *United States v. Madrid*, 633 F.3d 1222, 1226 (10th Cir. 2011) (internal quotation marks omitted). Jurisdiction is not returned to the district court until the appellate court enters a mandate. A "mandate consists of our instructions to the district court at the conclusion of the opinion, and the entire opinion that preceded those instructions." *Procter & Gamble Co. v. Haugen*, 317

13

F.3d 1121, 1126 (10th Cir. 2003). Once entered, the mandate rule "provides that a district court must comply strictly with the mandate rendered by the reviewing court." *Huffman v. Saul Holdings Ltd. P'ship*, 262 F.3d 1128, 1132 (10th Cir. 2001) (internal quotation marks omitted). "[A]n inferior court has no power or authority to deviate from the mandate issued by an appellate court." *Briggs v. Pa. R.R. Co.*, 334 U.S. 304, 306 (1948). This includes all issues "expressly or impliedly disposed of on appeal." *Procter & Gamble Co.*, 317 F.3d at 1126 (internal quotation omitted). The transfer of jurisdiction during an appeal prevents a district court from issuing orders that might conflict with the mandate rule.

But "an effective notice of appeal does not prohibit all later action in the case by the district court." *Id.* "Undoubtedly, after appeal the trial court may, if the purposes of Justice require, preserve the status quo until decision by the appellate court." *Newton v. Consol. Gas Co.*, 258 U.S. 165, 177 (1922); *Madrid*, 633 F.3d at 1227 (citing James Wm. Moore et al., Moore's Federal Practice § 303.32(2)(b) (3d ed. 2010)).[3] The purposes include, for example, the authority to manage ongoing supervisory orders or enter or modify temporary or preliminary injunctions. *Roberts v. Colo. State Bd. of Agric.*, 998 F.2d 824, 827 (10th Cir. 1993).

---

[3] This is not the first time this argument has appeared in a case connected to Mr. Carpenter's fraud. *See United States v. Carpenter*, 941 F.3d 1, 5–6 (1st Cir. 2019) (rejecting Mr. Carpenter's argument that the district court could not determine the amount of previously ordered forfeiture during an appeal).

14

Limited residual authority to maintain the status quo during an appeal is deeply rooted in our jurisprudence. *See Hovey v. McDonald*, 109 U.S. 150, 161–62 (1883) (observing that the rules of equity permitted lower courts "to order a continuance of the status quo until a decision should be made by the appellate court"). That authority is also expressed in the Federal Rules of Procedure; allowing district courts to consider and order "suspending, modifying, restoring, or granting an injunction while an appeal is pending." Fed. R. App. P. 8(a)(1)(c); Fed. R. Civ. P. 62(c)–(d).

After the notices of appeal, but before our opinion issued, the district court continued to manage the receivership and consider motions for sanctions. Those orders are not appealed here. On appeal are the orders entered after we issued our opinion in *Universitas I*, including those entered before the mandate: one preliminarily re-adopting the vacated judgment and injunction and the other continuing that injunction "as of the issuance of the mandate." App., Vol. 17 at 4083–84.

We must consider whether those orders fall within the retained jurisdiction of the district court. While Avon and SDM argue that the lack of a returned mandate renders these orders void and unsupported by jurisdiction, the district court's first pre-mandate order was preliminary, and meant to preserve the status quo until the parties considered the ramifications of the panel's opinion. The second pre-mandate order readopted the judgment and enjoined Avon effective as of the issuance of the mandate. Those orders fall within the confines of a district court's limited retained authority during an appeal.

15

First, federal rules of civil and appellate procedure permit district courts to suspend, modify, restore, or grant an injunction while an appeal is pending. *Roberts*, 998 F.2d at 827 ("Fed. R. App. P. 8(a) expressly recognizes this continuing power of a district court as it requires an application for an order 'modifying . . . an injunction during the pendency of an appeal' to be made in the first instance to the district court."). Second, district courts are permitted to enter orders meant to preserve the status quo during an appeal. *Madrid*, 633 F.3d at 1227.

The district court's orders easily fall within the first exception, as it granted or restored its injunction against Avon, an order expressly permitted by the Federal Rules. *See* Fed. R. App. P. 8(a). It did so to ensure that no financial assets in which Universitas might have an interest would be lost or transferred. Again, that is something district courts are expressly empowered to do. Fed. R. Civ. P. 62(c) (The district court may "suspend, modify, restore, or grant an injunction during the pendency of the appeal . . . as it considers proper for the security of the rights of the adverse party.").

As for the second exception, although the district court's equitable powers are not unlimited during an appeal, they can be exercised to preserve the status quo, or as part of a continuing supervisory order. That is what the orders here did. Avon and SDM ignore the context of the orders and the articulated purpose the district court included in its July 13 order:

> The court references the adoption as "preliminary" so as to leave open for discussion at the pretrial conference the nature and impact of the Tenth Circuit's decision on the R&R and

16

other actions taken in the case.  In the meantime, however, it is the court's intention to freeze the status of all parties and their related interests in SDM, based on the facts and circumstances previously addressed, pending the pretrial conference.

App., Vol. 16 at 3892 n.1.  The district court plainly stated that the purpose of its injunction was to preserve the relative positions of the parties until the results of the appeal could be determined and effected.  This order was within the bounds of jurisdiction retained on appeal.

### 2.  Jurisdiction After the Mandate

The district court also concluded the refiled New York judgment permitted it to readopt its orders after the mandate was issued.[4]  Avon and SDM argue that because *Universitas I* found the dispute moot, the district court had no choice under the law-of-the-case doctrine but to dismiss.  This contention turns on the substance of the opinion's instruction.

Under the "law of the case" doctrine, a court's legal ruling "should continue to govern the same issues in subsequent stages in the same case."  *Arizona v. California*, 460 U.S. 605, 618 (1983).  "[W]hen a case is appealed and remanded, the decision of the appellate court establishes the law of the case and ordinarily will be followed by both the

---

[4] There was no need to treat the appealed order as vacated until the mandate returned from the Tenth Circuit.  As shown by the changes in the amended opinion, the effects of an appellate opinion are not finalized until a mandate issues.  So Avon and SDM's motions to dismiss for lack of jurisdiction, filed before the mandate issued, were premature as well as meritless.

trial court on remand and the appellate court in any subsequent appeal." *Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1183 (10th Cir. 1995). Under the mandate rule, the law of the case is binding on the district court once the Clerk of Court enters the mandate. *Briggs*, 334 U.S. at 306.

Because Avon and SDM argue that the district court violated our instruction, "we look for specific limitations on the district court's discretion." *United States v. Walker*, 918 F.3d 1134, 1144 (10th Cir. 2019). "[U]nless the district court's discretion is specifically cabined" by our instruction, "it may exercise discretion on what may be heard." *United States v. West*, 646 F.3d 745, 749 (10th Cir. 2011). The primary question here is whether the finding of mootness and our instruction required immediate dismissal of the case.

Typically, when an appellate court finds a case moot, it remands with instructions to dismiss the case. *See United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 n.2 (1950) (collecting cases). But there are exceptions to that rule. *Id.* (collecting exceptions). For example, courts do not follow this typical practice if a case becomes moot because of an intervening change in law. *See Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 482 (1990). Nor do they where a case or controversy is "capable of repetition, yet evading review." *Murphy v. Hunt*, 455 U.S. 478, 482 (1982); *see also United States v. Seminole Nation*, 321 F.3d 939, 943 (10th Cir. 2002) (Exception arises "when: (1) the duration of the challenged action is too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party . . . [will] be

18

subjected to the same action again." (internal quotation marks omitted)).  In other circumstances, the Supreme Court has allowed parties to cure their jurisdictional deficiencies while on appeal, rather than "require the new plaintiffs to start over in the District Court," which "would entail needless waste and runs counter to effective judicial administration."  *Mullaney v. Anderson*, 342 U.S. 415 (1952).

None of these cases is a direct analogue to this one, where the jurisdictional defect was due to Universitas's failure to timely renew its judgment.  But they demonstrate the discretion that an appellate court has in issuing instructions to the lower court.  No rule in law or procedure requires that upon a finding of mootness, an appellate court *must* remand with instructions to dismiss.  While that may be the typical practice, it is not an absolute requirement.

Our instruction here did not mandate dismissal.  True, *Universitas I* held that "Universitas lacked a legally cognizable interest in the outcome once its judgment expired, . . . the case became moot and the district court lacked Article III jurisdiction to enter its order, rendering the order void."  App., Vol. 16 at 4011.  This language provides Avon and SDM their strongest argument; that Universitas lacked a personal stake in the litigation during the lapse in the judgment.  They cite *Lewis* and cases applying it for the proposition that mootness which deprives plaintiffs of a personal stake in the litigation must also result in dismissal.  *See, e.g.*, *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013) (citing *Lewis*, 494 U.S. at 477–78).  But "the Supreme Court's cases are less than clear as to whether and how a jurisdictional defect can be remedied in the course

19

of litigation." *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005). Many courts, including the Supreme Court in *Lewis*, have allowed that a *temporary* lapse in jurisdiction, which renders moot any orders issued during the lapse, can still be cured before the case is dismissed.[5] The thrust of Avon and SDM's argument is that the district court should have dismissed the case, forcing Universitas to file a new cause of action and refile the New York judgment.

Nothing in *Universitas I* cabined the district court's discretion on how to proceed on remand. Charting the next course was within the district court's discretion.[6] *West*, 646 F.3d at 749 ("[U]nless the district court's discretion is specifically cabined, it may exercise discretion on what may be heard."). At bottom, the prior panel *did not* mandate

---

[5] *See e.g.*, *Lewis*, 494 U.S. at 482 (Vacating the judgment and remanding for further proceedings even though "the judgment below [was] vacated on the basis of an event that mooted the controversy."); *Mullaney*, 342 U.S. at 417 (Explaining that where original plaintiffs lacked standing, but substitute plaintiffs were proper, "[t]o dismiss the present petition and require the new plaintiffs to start over in the District Court would entail needless waste and runs counter to effective judicial administration."); *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 73 (1996) (holding that considerations of "finality, efficiency, and economy" overwhelmed concerns about jurisdictional defects that were cured before trial); *Mires v. United States*, 466 F.3d 1208, 1212 (10th Cir. 2006) (refusing to vacate judgment or dismiss when "representative cured the jurisdictional deficiency while his suit was pending").

[6] While the amended opinion rightfully avoided dicta about the refiled judgment, the amendment was not a repudiation of jurisdiction based on the refiling. Instead, the prior panel followed the guidance of *Munsingwear*, by "clear[ing] the path for future relitigation of the issues between the parties and eliminat[ing] a judgment, review of which was prevented through happenstance." 340 U.S. at 40. The amended opinion ultimately left the district court with wider discretion to direct the proceedings than the original opinion—including rejecting or accepting the refiled the judgment.

that the case be dismissed. *See Walker*, 918 F.3d at 1144 ("In interpreting the scope of a previous mandate, we look for specific limitations on the district court's discretion."). Without such an instruction, the district court was within its discretion to consider the refiled judgment and did not violate the law of the case by declining to immediately dismiss the case.

Recall, however, that foreign-judgment proceedings are governed by both federal and state law. Having determined the former did not require dismissal, we turn to the latter. Oklahoma law establishes that refiling a foreign judgment permits the district court to exercise continuing jurisdiction. As we explained in *Universitas I*, Oklahoma courts permit creditors to refile and collect on expired judgments, so long as the original judgment remains enforceable in its state of origin. *Universitas I*, 2023 WL 5005654, at *3 (citing *Taracorp*, 419 P.3d at 218–23; Okla. Stat. § 12-735).

Avon and SDM argue this case is distinguishable from Oklahoma precedent, because Universitas refiled its judgment in the *same* case, rather than refiling the judgment in a new cause of action. They rely on *Yorkshire W. Cap., Inc. v. Rodman*, when the Oklahoma Court of Appeals found an expired judgment could be valid and enforceable after it was "properly filed [ ] a second time in Oklahoma *under a new case number*." 149 P.3d 1088, 1093 (Okla. Civ. App. 2006) (emphasis added). But nothing suggests that a "new case number" is a jurisdictional requirement. When the Oklahoma Supreme Court later addressed the issue in *Taracorp*, it never mentioned any "new case" requirement. 419 P.3d at 218–23.

21

Even if *Taracorp* had adopted such a requirement, it would still be distinguished by the practical differences between those cases and this one. Both *Yorkshire West Capital* and *Taracorp* involved judgments that had been expired for years, without any active litigation.[7] Universitas was still diligently pursuing its judgment when it expired, and the time between expiration and refiling was much shorter. Nor can Avon and SDM give any reason why this *should* be the rule based on Oklahoma's governing statutory language. *See* Okla. Stat. § 12-735(B).

And even if a new case number might be required under Oklahoma law, "[t]he procedure on execution" under Rule 69, "requires only substantial compliance with the procedural provisions of any controlling state statutes or case law." *Bartch*, 111 F.4th at 1057.[8] "Substantial compliance" tolerates some deviation from legal technicalities. *Id.*

---

[7] We don't agree with Avon and SDM's reading of *Universitas I* as foreclosing this analysis. That panel held "[b]ecause the re-filing of the judgment in *Taracorp* was a critical component of the Oklahoma Supreme Court's analysis, we cannot extrapolate its holding to encompass this case without further instruction from the Oklahoma Supreme Court." 2023 WL 5005654, at *4. *Taracorp* could not be properly applied to that appeal because, when Avon and SDM filed their appeal, Universitas had not refiled its judgment. The preceding sentence in *Universitas I* confirms this reading: "neither *Taracorp* nor any of the cases it cites involves an attempt to do what Universitas seeks to do here—enforce a judgment that had previously been filed and expired in a particular state *without re-filing* said judgment in the same state." *Id.* (emphasis added). Universitas no longer seeks to enforce its judgment *without re-filing* said judgment, so *Taracorp* now applies.

[8] We have not previously held in a published case that Rule 69(a), or its relaxed substantial-compliance standard, applies to the revival of judgments. We have applied Rule 69(a) to post-judgment collection efforts, but not to revival of judgments

(Rule 69(a) "is 'not meant to put the judge into a procedural straitjacket' and requires only compliance 'with the spirit of the Rules.'" (quoting *Thomas, Head & Greisen Emps. Tr. v. Buster*, 95 F.3d 1449, 1452 (9th Cir. 1996))). Without a clear requirement from Oklahoma law that refiling must occur via a new suit once the original has expired, Universitas's refiling complies with Rule 69.[9] It was therefore proper for the district court to conclude that the refiled judgment resurrected jurisdiction in this case.

With jurisdictional arguments satisfied, we turn to the merits arguments, and find them to be unpersuasive.

**B.** *Merits*

*1. Motions to Strike and for Additional Discovery*

Avon and SDM attack two declarations by Universitas's counsel, Mr. Chernow, attached to briefing on summary judgment. The declarations supported the admissibility of documents and filings from previous litigation against Mr. Carpenter. Avon and SDM filed two motions to strike the declarations, or, in the alternative, they requested permission to depose Mr. Chernow.

---

specifically. *See Bartch*, 111 F.4th at 1057. But two of our unpublished cases have applied the rule in this context. *Sec. Inv. Prot. Corp. v. Institutional Sec. of Colorado, Inc.*, 37 F. App'x 423, 425 (10th Cir. 2002) ("Authority to revive a federal court judgment is provided by Fed. R. Civ. P. 69(a)."); *McCarthy v. Johnson,* 172 F.3d 63, at *1 (10th Cir. 1999) (unpublished).

[9] That Universitas also filed a new case to be safe does not influence our decision. See App., Vol. 17 at 4225. That case is administratively closed.

The district court denied these motions to strike. Evidentiary rulings by the district court at the summary judgment stage are reviewed for abuse of discretion. *Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006). In this deferential posture, there are no grounds to overturn those decisions.

Federal Rule of Civil Procedure 56(e) governs the admissibility of affidavits at the summary judgment stage:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers . . . referred to in an affidavit shall be attached thereto or served therewith.

We have reduced that rule to two requirements: "(1) the *content* of summary judgment evidence must be generally admissible and (2) if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, i.e., the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005) (emphasis added).

The Chernow Declarations contained a list of exhibits from prior proceedings. Mr. Chernow, an associate at a law firm which represented Universitas, reviewed the exhibits, and so he knew what they contained, but was not "witness" to them. The declarations summarized and authenticated each exhibit. The magistrate judge declined to strike the Chernow Declarations in total and deferred to the district judge's judgment on striking any specific portions found inadmissible. When adopting the magistrate

24

judge's report and recommendation, the district judge made no specific mention of the declarations or the motions to strike.

Avon and SDM argue the Chernow Declarations were inadmissible since they were not based on personal knowledge. Universitas responds that Mr. Chernow's review of the documents was enough to establish personal knowledge, that the content of the documents was admissible even if it were not admissible in this form or from this witness, and that any improperly admitted statements were harmless error.

*Bryant* vindicates Universitas's first two arguments. In that case, we allowed the declaration of an accountant who reviewed the results of 103 audits she did not personally conduct because her *review* established her personal knowledge. The contents of the audits were admissible. We also agree with Universitas that even assuming the declarations were inadmissible, any reliance on improper statements would have been harmless error. Avon and SDM point to arguments that Universitas made relying on the Chernow Declarations but do not identify any point at which either the magistrate judge or the district judge relied on their supposedly inadmissible contents. Under these circumstances, it was not an abuse of discretion to deny the motions to strike.

The alternative request, to stay the summary judgment proceedings to depose Mr. Chernow, is also flawed. That request was made in a fleeting passage of the motions to strike. But Rule 56(d) allows district courts to defer consideration of summary judgment and allow time for a party to take discovery only "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its

opposition." Neither Avon nor SDM showed "by affidavit or declaration," that deposing Mr. Chernow would reveal otherwise unavailable facts necessary to justify their opposition to summary judgment. *Id.* This failure to satisfy Rule 56 means the district court did not abuse its discretion. *See Price ex rel. Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000).

### 2. *Summary Judgment*

Avon and SDM next contend the district court should have granted summary judgment in their favor and denied Universitas's motion for summary judgment. Avon and SDM's arguments diverge here. On the one hand, Avon moved for summary judgment because Universitas never served it with a formal complaint alleging an alter-ego/veil-piercing action. It insists that formal allegation is required in the pleadings as a measure of due process. On the other hand, SDM claims it was never properly served, and that it did not possess property owed to Avon as a judgment debtor. Both Avon and SDM agree on one thing: it was error for the district court to judicially notice certain facts from prior cases in denying their motions.

As discussed above, "[t]he procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located." Fed. R. Civ. P. 69. At least two Oklahoma courts have allowed post-judgment proceedings to pierce the corporate veil against alter egos even when alter ego/veil piercing did not appear in the complaint. *See Mattingly Law*

*Firm, P.C. v. Henson*, 466 P.3d 590, 597 (Okla. App. 2019); *Sproles v. Gulfcor, Inc.*, 987 P.2d 454, 457 (Okla. App. 1999).

Avon claims due process requires veil-piercing be alleged in a complaint. But a proceeding that involves notice, an adversarial hearing, an opportunity to cross-examine witnesses, representation by counsel, and appellate review is more than sufficient for federal due process. *See Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 484 (1982). Avon received the process it was due. Setting aside the fact that it intervened after receiving notice, the only cases cited to support Avon's position reject its argument as "much too broad a reading." *Nikols v. Chesnoff*, 435 F.App'x 766, 771 (10th Cir. 2011) (explaining that under Utah law, not all post-judgment proceedings require a new complaint); *Sproles*, 987 P.2d at 457 ("The trial court erred in denying Plaintiff Sproles' motion to execute judgment [and pierce the corporate veil] on the ground that the shareholders' liability must be pursued in a separate suit."). Under Oklahoma law, which controls here, post-judgment collections and veil piercing may proceed without filing a new complaint. *See Mattingly Law Firm, P.C.*, 466 P.3d at 597; *Sproles*, 987 P.2d at 457.

SDM's arguments also gloss over the less stringent, "substantial compliance" requirement of Rule 69. *Bartch*, 111 F.4th at 1057. Trivial omissions like a failure to attach a request and claim for exemptions, or the failure to use certified mail, are the exact type of technicalities that may be overlooked in the face of substantial compliance. SDM received adequate notice, including a subpoena, writ of general execution, and a garnishment summons—all of which should have alerted it to a potential veil piercing

27

action.  [App., Vol. 18 at 4264.]  SDM's argument that Universitas abandoned or satisfied the garnishment rests on strained and illogical readings of orders earlier in proceedings which said nothing of the sort.  And its argument that it owes no garnishable assets to Avon hinges on a self-serving affidavit that discusses Avon-CT and Avon-NV, but not Avon-WY.

The judicial notice arguments are also meritless.  The district court took judicial notice of facts and rulings from prior proceedings.  In defense of that decision, Universitas argues Avon was in privity with the parties in those cases, and the facts the court noticed were adjudicative facts, so notice was proper and fair to Avon and SDM.  *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins.*, 605 F.2d 1169, 1172 (10th Cir. 1979).  But the panel need not reach these arguments because Avon and SDM did not preserve their challenge to the judicial notice.

Avon and SDM failed to object to any judicially noticed facts before the district court, so the argument is at least forfeited.  *United States v. Carrasco-Salazar*, 494 F.3d 1270, 1272 (10th Cir. 2007) (arguments not raised before the district court are forfeited on appeal).  In fact, they actively argued that the district judge should judicially notice facts from the same proceedings it now objects to.  *See, e.g.*, App., Vol. 8, at 1823, n.1 (arguing "[p]ursuant to Federal Rule of Evidence 201, the Court may take judicial notice of documents filed in other actions." (quoting *United States v. Pursley*, 577 F.3d 1204, 1214 n.6 (10th Cir. 2009))).  If the district court erred, it was an invited error, and errors invited by an appellant are waived on appeal.  *United States v. Rodebaugh*, 798 F.3d

28

1281, 1304 (10th Cir. 2015) ("[I]nvited error precludes a party from arguing against a proposition the party willingly adopted.").

### 3. Receivership

Finally, Avon and SDM argue that the district court erred by reappointing a receiver over Avon Capital-WY and its interests in SDM Holdings. According to them, Oklahoma law only allows the court to issue a "charging order," which acts as a lien on any transferrable interest in an asset, along with a right of foreclosure against that asset. Okla. Stat. § 54-1-504(a). Separately, they also claim the district court abused its discretion by incorrectly weighing the factors for appointing a receiver.

The appointment of a receiver is reviewed for an abuse of discretion. *SEC v. Scoville*, 913 F.3d 1204, 1213 (10th Cir. 2019). If the appointment of the receiver rests on interpretation of an authorizing statute, the district court's interpretation is reviewed de novo. *Navajo Nation v. Dalley*, 896 F.3d 1196, 1206 (10th Cir. 2018).

Whether Oklahoma law permits the district court to appoint a receiver, rather than merely issue a charging order, turns on which assets that Universitas seeks to collect. Avon and SDM are both LLCs. Under Okla. Stat. § 18-2034, the typical remedy for collecting on membership interest in an LLC is a charging order.

But the charging order limitation applies only to membership interests, meaning the interest that a member of the LLC has in the LLC itself. Those interests are distinct from the LLC's own assets. See Okla. Stat. § 18-2032 ("A capital interest is personal property. A member has no interest in specific limited liability company property.").

Universitas is not seeking to collect against an Avon member, but against the LLC itself, by garnishing assets that are in the possession of SDM. The district court agreed, and any error in that decision does not rise to an abuse of discretion under Oklahoma law.[10]

Oklahoma law supports the appointment of receivers only when one of the six circumstances in Okla. Stat. § 12-1551(1)–(6) are met. These circumstances include: when property is shown to be in danger of being lost; to carry a judgment into effect; to dispose of or preserve property subject to a judgment during an appeal; or any circumstance in which Oklahoma courts of equity have appointed receivers.

The district court did not abuse its discretion in weighing the circumstances under Okla. Stat. § 12-1551. Avon and SDM provide little analysis beyond simply disagreeing with the district court's weighing of discretionary factors.[11] Their disagreement rests on the conclusion that Avon-WY is part of a vast network of interrelated entities used to perpetrate fraud—a conclusion that is amply supported by the record and was detailed in

---

[10] In the alternative, Universitas argues that it should be permitted to recover regardless of the statutory limitations because Avon is engaged in fraud, and the statute provides that "the rules of law and equity shall supplement" the remedies available to creditors. *Mattingly Law Firm, P.C.*, 466 P.3d at 595. Equity favors the appointment of a receiver here. *See Oklahoma Co. v. O'Neil*, 440 P.2d 978, 987 (Okla. 1968).

[11] Avon and SDM failed to raise these disagreements when the district court reappointed the receiver. And arguments waived in the district court must show plain error to succeed on appeal. *In Re Rumsey Land Co.*, 944 F.3d 1259, 1271 (10th Cir. 2019). But Avon and SDM challenged the district court's weighing of the circumstances when the court first imposed a receiver, prior to *Universitas I*. *See* App., Vol. 10 at 2438–51. *Universitas I* did not reach that argument. Given the circumstances, we find it proper to address it now.

the magistrate judge's recommendation.  That conclusion naturally led the district court to find that the indebted property was in danger of being lost, removed, or materially injured, that the receivership would assist in the execution of judgment.  And prior courts of equity authorized receiverships in similar situations.  *See Oklahoma Co. v. O'Neil*, 440 P.2d 978, 987 (Okla. 1968); *Anglo-Am. Royalties Corp. v. Brentall*, 29 P.2d 120, 121 (Okla. 1934).

The district court did not abuse its discretion.

### III.   Conclusion

It is worth pausing to reflect on this case's broader context:  In 2008, Mr. Carpenter stole $30 million worth of life insurance proceeds that were meant for Universitas.  Universitas received its arbitration judgment against Mr. Carpenter and his entities, including Avon, in 2012.  That judgment is valid for twenty years.  Mr. Carpenter has been tried and convicted for his fraudulent business activities—twice.  *See generally, United States v. Carpenter*, 405 F. Supp. 2d 85 (D. Mass. Dec. 15, 2005); *United States v. Carpenter*, 190 F. Supp. 3d 260, 274 (D. Conn. June 6, 2016).  He has been sentenced and even fully served out those sentences in the years since Universitas first received its judgment.  While Mr. Carpenter's debt to society may have been repaid, his entities' debts to Universitas certainly have not.

The district court's orders are AFFIRMED.